**FILED**

JUL 2 6 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

AISHA HUSSAIN )
2262 Sir Amant Drive )
Lewisville, TX 75056 )
972-899-4779 )
      **Plaintiff,** )
  )
    v. )
  )
**Carlos M. Gutierrez, Secretary** )
U.S. Department of Commerce, Agency )
1401 Constitution Ave., NW )
Washington, DC 20230 )
  )
      **Defendant.** )
  )
  )
  )
  )
  )
  )
  )
_____ )

**Civil Action No**

Case: 1:07-cv-01364
Assigned To : Kennedy, Henry H.
Assign. Date : 7/26/2007
Description: Employ. Discrim.

**JURY ACTION**

## COMPLAINT

### Preliminary Statement

1.    Plaintiff, Aisha Hussain, brings this action against Defendants U. S.

Department of Commerce ("U.S. Department of Commerce and/or Mr. Carlos M.

Gutierrez and/or Mr. David Rundell (Mr. Rundell")), for employment discrimination and

hostile work environment in violation of the Title VII of the Civil rights Act of 1964

(Title VII) being gender, national origin, and religion, and pregnancy discrimination, and

retaliation by Mr. Rundell. Plaintiff seeks back pay, compensatory and punitive damages,

equitable relief; and attorneys' fees and costs.

## Jurisdiction

2.      This court has jurisdiction over this action pursuant to 28 U.S. C. §§ 1331

and 1343.

3.      This action is authorized and instituted pursuant to Section 706 (f) of Title

VII, 42 U.S. C. § 2000e-5 (f).

4.      All funding, approvals, and operations was controlled by the Department

of Commerce in DC.

5.      Plaintiff has exhausted her administrative remedies.

## Parties

6.      Plaintiff, Aisha Hussain, is a citizen of the United States and a resident of

Lewisville, TX.  At all times relevant to this complaint, Ms. Hussain was employed by

the U.S. Department of Commerce inside the American Embassy in Riyadh, Saudi

Arabia.

7.      U.S.  Department of Commerce deducted Federal Taxes, Medicare,

OASDI or Social Security from each check issued to Ms. Hussain, and each check was

directly deposited into a bank in the States.

8.      Sick and Annual leave was being accrued in each paycheck.

9.      All supplies and equipment that Ms. Hussain required to work was

supplied by the U.S. Department of Commerce.

10.     The cable/authorization approving the fiscal/Administrative Assistant

position (job duties) for Ms. Hussain's employment came from the U.S. Department of

Commerce in D.C, Defendant.

11.    The cable/authorization approving the availability of funds for the fiscal/Administrative Assistant position for Ms. Hussain's employment came from the U.S. Departmetn of Commerce in D.C., Defendant.

12.    Ms. Hussain was in effective an employee under the Civil Rights Act VII.

13.    Plaintiff's Supervisors who were employees of the Department of Commerce had daily detailed supervision and control over the Plaintiff's activities.

## Background Statement

14.    Aisha Hussain is a U.S. citizen of Indian origin and Islamic faith and a female. She worked at the U.S. Embassy in Saudia Arabia for the U.S. Department of Commerce from May 20, 2001 until October 8, 2003 under a personal service contract. During this period her initial supervisor was Mr. Charles Kestenbaum from – May 20, 2001 until September 7, 2002. Prior to this Ms. Hussain worked for the same on a temporary basis from September 2000 to May 20, 2001. After September 7, 2002 Ms. Hussain's supervisor was Mr. David Rundell, whose position was Senior Commercial Counselor. During this period Ms. Hussain's job title was Fiscal/Administrative Assistant.

15.    First contract was from May 20, 2001 until September 30, 2001. Then Ms. Hussain was given a contract that was from October 1, 2001 through September 30, 2002. Then the next contract was from October 1, 2002 through September 30, 2003. After September 31, 2003 Ms. Hussain continued to report to work. She naturally assumed that her contract would be renewed for another year, as it was the routine for contracts to renew up to five years per the contract's FAR clauses 52.217-9.  In addition it is stated in her contract that a U.S. citizen can not be terminated at any time during the

contract period with out a 15 days written notice by the contracting officer to the contractor.

16.     On October 8, 2003 Mr. Rundell gave Ms. Hussain a new contract. As printed, the contract was from October 1, 2003 to September 30, 2004 with all funds being available. However, Mr. Rundell drew a line across the end date of September 31, 2004 and hand wrote the end date of October 31, 2003 and abruptly terminated Ms. Hussain's contract without any notice when she was seven plus months pregnant on October 8, 2003.  Ms. Hussain notified Mr. Rundell of her pregnancy in August of 2003.

17.     The termination of Ms. Hussain's contract was due to Mr. Rundell's discrimination against Ms. Hussain on the basis of her gender, national origin, and religion. In addition, Mr. Rundell discriminated against Ms. Hussain on the basis of her pregnancy and continuously retaliated against Ms. Hussain for bringing her concerns to the officials at the Commerce Department, Office of the Inspector General, and the Equal Employment Office.

18.     Since September of 2002 to October 8, 2003 Ms. Hussain had been continuously asking various individuals at the Commerce Department in Washington DC, State officers at the Riyadh Post, and the OIG and EEOC office for their help in resolving the physical and mental hardship that Ms. Hussain was made to endure by Mr. Rundell. All along from September 2002 to October 2003, Mr. Rundell was continuously being made aware of the claims that Ms. Hussain was making against him.  Due to this Mr. Rundell deliberately and systematically discriminated Ms. Hussain and created an extremely hostile working environment for her and eventually abruptly terminated her contract when she was seven plus months pregnant.  On September 29, 2003 Ms. Hussain

contacted the OIG and EEOC office for getting the paper work to file the claims. On

October 1, 2003 Ms. Hussain spoke to Ms. Jill Gross in the OIG office and on October 8,

2003 emailed Ms. Barbara Toy in the EEOC office that she will be contacting them. Per

the officer Mr. Douglas Wallace (who worked under Mr. Rundell in the Riyadh office),

the OIG and EEOC office made the Commerce ANESA Regional Director, Ms. Bobette

Orr (who Mr. Rundell reported to) aware of the calls that Ms. Hussain made to their

offices. In return Ms. Orr made Mr. Rundell aware of these calls and Mr. Rundell

retaliated by abruptly terminating Ms. Hussain's contract.

### Supporting facts

19.    Mr. Rundell, was the Commercial Counselor of the U.S. Department of

Commerce and a direct employer of Ms. Hussain. Mr. Rundell believed that since Aisha

Hussain was of Indian origin, a female, and a conservative Muslim that she is more like a

maid and a personal servant and should be doing such tasks without any questions.

### Hostile Working Enviroment

20.    During the period Ms. Hussain worked for Mr. Rundell he constantly

created a hostile working environment. Some example of how Mr. Rundell created a

hostile working environment is as follows:

> a.    Mr. Rundell required Ms. Hussain to keep track of his wife's (who
> was not a Commerce employee) schedule.
>
> b.    Mr. Rundell allowed his wife, Yin Rundell, to also treat Ms.
> Hussain as her personal servant also. For example, from October 27 to 29,
> 2002, She was required to work on Ms. Rundell's personal travel to
> Jeddah. This included buying her ticket, obtaining a sponsorship letter

from the GSO office, arranging a driver for her pickup, and transportation while in Jeddah.

c.      Ms. Hussain was effectively subject to direction by Ms. Rundell (who, of course, was not a U.S. government employee), as Ms. Rundell was constantly around the office any where from 4 to 6 hours daily. On many occasions Ms. Rundell's orders interfered with official work.

d.      Mr. and Ms. Rundell expected Ms. Hussain to care for their 8 year old daughter Caroline during work hours. This included: (a) Bringing snacks for Caroline when the driver picked her up from school. (b) Babysitting Caroline when Ms. Rundell was at the Embassy conducting personal work.

e.      Mr. and Ms. Rundell's personal use of the official cars dictated Ms. Hussain's work schedule. Ms. Rundell knew that Ms. Hussain was dependent on the drivers for transportation to and from work due to Saudi law prohibiting women from driving, and this was a service that was provided to all female employees by the department.

f.      Mr. Rundell insisted on using Ms.Hussain as a dispatcher of the drivers – rather than supervisor, which was her official duty – to facilitate his and Ms. Rundell's personal use of the official vehicles and drivers. Also, to deliberately create and task me with demeaning and unnecessary tasks.

g.      Mr. Rundell would constantly assign Ms. Hussain with work that were written in other employees' job descriptions to overload her.

h.    Mr. Rundell expected Ms. Hussain to take work home. He wanted her to made long distance calls from home, use the internet, use an outside fax, printer and etc. and he was not going to reimburse her.

i.    On October 6, 2002, Mr. Rundell required Ms. Hussain to give the drivers different instructions than what the Regional Security Office advised the Embassy to do. On 10/6/02 Mr. Rundell instructed Ms.Hussain to tell the drivers to open and close the doors for all passengers and to assist all passengers with luggage, packages, and etc, especially Mr. and Mrs. Rundell and their daughter Caroline. Even though, the Regional Security Office had recently advised that all drivers need to remain inside their cars at all times due to the recent cases of car bombings and not to leave the cars unattended at any time. If anything had gone wrong, Ms. Hussain would have been responsible as she was the drivers' supervisor.

j.    Mrs. Rundell also gave Ms. Hussain orders that went against administrative advisories when they did not suit her. On March 19, 2003 there was a threat to Embassy personnel and a notice was immediately sent out requiring all embassy personal to be back in the quarters by 3:00 p.m. As soon as Ms. Hussain received this notice, she sent a driver to pick up Mr. Rundell's daughter, who was at a friend's house. But, Mrs. Rundell sent the driver back saying that their daughter did not get enough time to play with her friend and to pick her up at 5:00 p.m. If anything

had happened to the car or any passengers Ms. Hussain would be questioned, as she was the driver's supervisor.

k.      Mr. Rundell constantly rewrote Ms. Hussain's job description, five times in writing and more then dozen times verbally. From the time Mr. Rundell arrived at post she did not work on one job description for three months consecutively. In addition, even if Mr. Rundell had a job description on paper, he would still deny that was her job description. Case in point the August 28, 2003 job description was given to her on a official form but per Mr. Ed Burton's memo, Mr. Rundell denied this job description that was given to her even with official signatures on it.

l.      Mr. Rundell's behavior toward me was clearly intended to intimidate and belittle. Despite Mr. Rundell's significant experience in the Middle East, he often acted in ways that belied his knowledge of Muslim practices. His treatment was unique to Ms. Hussain and showed an extreme lack of respect for her religious and ethnic practices. Mr. Rundell would speak to Ms. Hussain at a distance of inches, drastically invading her personal space. Mr. Rundell would stare at Ms. Hussain long and hard in a manner that made her very uncomfortable.

m.      Mr.Rundell would call Ms. Hussain a dispatcher and clerk in front of others despite the fact that those jobs were clearly beneath the level of work that she was hired to perform.

n.      Mr. Rundell continually tasked Ms. Hussain with cleaning offices, files, hallways, looking after the remodeling workers, organizing the

supply cabinet, moving furniture, etc. (There was a male Administrative staff member but he was never asked to do such cleaning).

o.      Mr. Rundell required Mrs. Hussain to move her desk into the reception area after remodeling the office despite having full knowledge that it would put her, as a Muslim woman, in an uncomfortable position. Especially when there was constant talk in the office about seating a "beautiful blond" there. Also note as soon as Mr. Rundell arrived at post he reseated Mr. Masood from seating up front to a cubicle office.

p.      Mr. Rundell dictated what could be placed on Ms. Hussain's desk and what kind of chair she should sit in. Other staff members' offices were extremely messy with piles of documents and folders stacked up high everywhere, but Mr. Rundell never expected similar office arrangements of others.

q.      In an October 7, 2002 meeting with Ms. Debra Smoker-Ali (Human Resource Officer), Mr. Rundell compared Mrs. Hussain to a maid.

r.      Ms. Hussain was the only one given five official job descriptions by Mr. Rundell. Mr. Rundell undertook to change my job description and to downgrade my job duties several times. In addition, the Department of Commerce had begun to use job descriptions as a method to determine pay rates. By downgrading my job duties, Mr. Rundell was effectively reducing the pay rate that she was eligible to receive.

s.      When Ms. Hussain closed the door to pray, Mr. Rundell made prejudicial remarks. Mr. and Ms. Rundell laughed at the religious rituals of Islam in front of her to intimidate and scare her.

t.      Mrs. Rundell made Rundell made belittling remarks about my Indian/Pakistani attire.

u.      Ms. Hussain was the subject of periodic outbursts – screaming and yelling – from Mr. Rundell.

v.      Ms. Hussain was the only one tasked with hard labor and demeaning tasks on many occasions (clean offices, hallways, move debris, move heavy equipment.)

w.      Mr.Rundell consistently gave Ms.Hussain a hard time when she asked for time off, regardless of whether it was earned paid leave or unpaid. Mr. Rundell always permitted Mr. Masood, the male administrator, for leave without hesitation.

x.      Ms. Hussain was the only one in the office that had to pay for taxi rides out of pocket to attend official events. Ms. Wathen, by contrast, was always provided rides for official events.

y.      Mr. Rundell did not allow Ms. Hussain to work on the FCS budget even though she had prior budget experience and was originally hired to perform this job as a back-up. Mr. Rundell instead gave the task to Mr. Masood who was very inexperienced and lacked the knowledge. Whenever the budget deadlines drew never, Mr. Rundell would force Ms. Hussain to complete the budget projects.

z.      Mr. Rundell threated Mrs. Hussain on more then one occasion by

stating, "you know I fired Suad," to scare and intimate her.

aa.     On more then one occasion Mr. Rundell intimated and harassed

her by stating to just leave the job.

### Pregnancy Discrimination

21.     Mr. Rundell terminated Ms. Hussain's contract abruptly when she was 7

plus months pregnant. And per Mr. Doug Wallace, an officer in the Riyadh office, Mr.

Rundell had been intending to terminate her contract during her maternity leave.

### Gender Discrimination

22.     Mr. Rundell discriminated against Ms. Hussain for being an Indian female

and treated her as if she had no rights. No one in the office was treated in this extreme

manner by Mr. Rundell.    Some examples of gender discrimination occurred is as

follows:

a.      Mr. Rundell after remodeling the office made Ms. Hussain sit in

the open reception area fully visible to all general public that visited the

2nd floor and all who visited the Commercial section. Due to the situation

of women being fully covered in Saudi Arabia, all male visitors stared at

Ms. Hussain as a sex object. Mr. Rundell was fully aware of the Middle

Eastern culture and religion. Earlier when a male Administrative

employee, Mr. Masood, was sitting in the front Mr. Rundell had him

reseated in a cubicle office but forced Ms. Hussain to seat in this area.

b.      Mr. Rundell wanted Ms. Hussain to be as personal assistant as

Mona Hassoun (previous admin. Assistant at the previous post) was.

Including baby sitting and helping Mr. Rundell's daughter with homework. On many occasions Mr. Rundell stated to Ms. Hussain to call Mona to "find out how it's done."

c.      Ms. Hussain was made to watch remodeling male workers for months, who would made sexist remarks and would stare at her as an object. Despite other officers asking this job to be assigned to Mr. Masood, a male Administrator, Mr. Rundell insisted and assigned this job to Ms. Hussain knowing that it would put her in an extremely uncomfortable situation.

d.      Mr. Rundell deliberately gave Ms. Hussain jobs that were for individuals who had little or no education and job experience. (Dispatching drivers, ordering supplies, organize the supply cabinets, moving furniture, making leave charts, pulling furniture from warehouse, watch remodeling workers, get supplies for the remodelers and etc.). Any job duties that were above this level were deliberately taken out of my job duties and assigned to Mr. Masood or others by Mr. Rundell. Even though Mr. Masood, a male administrator, was not able to perform his job duties, as stated by Mr. Rundell, he never took any action against Mr. Masood.

e.      Mrs. Rundell would only task Ms. Hussain to remember to take snacks for Mr. Rundell's daughter, not even the drivers, who would be picking up and dropping Mr. Rundell's daughter were asked to do this as Mr. Rundell stated himself in the Report of Investigation.

## Origin Discrimination

23.    Mr. Rundell discriminated against Ms. Hussain for being of Indian origin, and treated her like a maid/servant. The maids in Saudi Arabia where from India, Bangladesh, and the Philippines, Some examples of the origin discrimination occurred is as follows:

a.    Ms. Hussain was expected to do things without question and was made to handle demeaning tasks by Mr. Rundell such as hard labor of cleaning offices, hallways, move debris, and move heavy equipment.

b.    Ms. Hussain was made to escort and watch male remodeling workers for weeks and was subjected to their sexist verbal abuse and behavior.

c.    Mr. Rundell reseated Ms. Hussain in an all glass reception area when measures where being taken by the Embassy due to threats to keep individuals away from windows and glass.

d.    Ms. Hussain was made to get tea and coffee for Mr. Rundell and his guest and pay for expenses out of her pocket.

e.    Mr. Rundell would make demeaning remarks in front of others comparing Ms. Hussain to a maid, calling her a dispatcher, and a clerk.

f.    Mr. Rundell would constantly yell and scream at Ms. Hussain to the point that she would "cry" with embarrassment and fear.

g.    Mr. Rundell deliberately did not hire another Administrative employee, for which he had full budget approval for since November 2002. Instead Mr. Rundell made Ms. Hussain do the work of three

administrative staff. (Mr. Rundell treated Ms. Hussain like how maids

where treated in the east, to overwork and burden them to exhaustion.).

h.      Mr. Rundell wanted to force Ms. Hussain to stay in Riyadh, even

though the Ambassador had ordered all U.S. citizens to go home, due to

the life threatening situation of the Riyadh bombings.

i.      Mr. Rundell removed the gas mask and chemical injections from

Ms. Hussain's area (even though all personnel in the Embassy where

required to keep the mask and injections in a easily visible area due to the

security threats).

j.      Mr. Rundell, his wife, Mrs. Rundell made fun of the Indian

Attire/clothes (Mrs. Rundell rode to and from work with Ms. Hussain

daily and would spend anywhere from 2 to 6+ hours at the office.)

### Religion Discrimination

24.      Mr. Rundell has a history of systematic discrimination against

conservative Muslims women. Mr. Rundell systematically discriminated both Ms.

Mawada Alwazir and Ms. Suad Abudl Malik (who wore the hijab, the head covering) at

his previous post in Jeddah. And when he came to Riyadh he systematically

discriminated Ms. Hussain as she was a conservative Muslim woman who dressed

modestly. Some examples of religion discrimination is as follows:

a.      Mr. Rundell would laughed/made fun of Islamic practices (visiting

Mecca and Medina), only in front of Ms. Hussain.

b.       When Ms. Hussain would get up to pray, Mr. Rundell would asked
if she was leaving work, which made her scared to go pray during her
break.

c.       When Ms. Hussain would pray in a cubicle office in the back, Mr.
Rundell would make the following statements rudely, is she sleeping in
there, to scare her from praying.

d.       Mr. Rundell made Ms. Hussain go to the souk (market) along with
four men and Mr. Rundell purposely created a scene, which could have
been fatal for Ms. Hussain (being a Muslim woman going around with
four men not related to her, could have resulted in a severe situation,
including stoning to death per the Islamic law if the Saudi Police were to
stop and question, which Mr. Rundell was familiar with as stated by him
in the report of investigation.

### **Retaliation**

25.       Ms. Hussain since September 2002 to October 8, 2003 brought her
discrimination complaints against Mr. Rundell and the abuse of government resources to
the attention of various officials on repeated occasions, through emails and personal
contacts.  Through out this time Mr. Rundell was being made aware by officials
regarding the discrimination that Ms. Hussain was claiming and continuously retaliated
against Ms. Hussain and at the end abruptly terminated her employment.

26.       On the following dates Mrs.Hussain brought her discrimination concerns
to:

a.       October 6, 2002 – Email to Ms. Debra Smoker–Ali, an HR official
at the Post, with an eleven page attachment.  In this email she provided an

extensive itemization of some of Mr. Rundell's abusive and questionable conduct.

b.      October 15, 2002 – Email to Ms. Smoker-Ali a five page attachment in which she further elaborated her discrimination concerns.

c.      January 27, 2003 – Email to Mr. Michael Staunton, key Commerce contact in DC, and eight page attachment where she elaborated how she was being treated differently then others and about Mr. Rundell's abuses.

d.      January 29, 2003 – Email to Ms. Debra Croft, the EEO liaison officer at the Post about the discrimination Mr. Rundell had towards Ms. Hussain.

e.      March 11, 2003 – Ms. Hussain mentioned personally to Administrative Officer Chris Riche in a meeting of how she was being treated unfairly.

f.      April 15, 2003 – Email to Mr. Staunton, Ms. Bobette Orr, Ms. Alberta Mayberry, Mr. Chris Riche, Ms. Smoker-Ali, Ms. JeNelle Matheson, Mr. Rundell regarding how Ms. Hussain was the only's job description being changed constantly every few days and how she was being discriminated.

g.      April 19, 2003 – Meeting between the DCM Ms. Scobey, Ms. Smoker-Ali, and Ms. Hussain regarding the discrimination.

h.      April 21, 2003 – Email to Mr. Staunton. In that email she asked why no action had been taken on her complaints about harassment and

misuse of government resources after she had repeatedly brought these
discriminative matters to the officials' attention.

i.      May 5, 2003 – Email to Mr. Staunton regarding discrimination
against her.

j.      September 29, 2003 – Email to the EEO Officer Bernadette
Worthy regarding getting the paper work to file a discrimination claim.

k.      Ms. Hussain spoke to Mr. Michael Staunton on several occasions
over the phone and conveyed to him the discrimination that Mr. Rundell
had toward her. That is why Mr. Staunton send Ms. Hussain an email on
January 23, 2003 saying," P.S. How are things in the office? Are they
better or worse?" To this email Ms. Husain send an email reply on
January 27, 2003.

27.     In addition, Ms. Hussain had several meetings with Embassy officials
regarding her complaints. Mr. Rundell was present for at least two of these meetings.
Mr. Rundell was well aware of her discrimination accusations by being present at
meetings, through emails, or through Commerce and Embassy Personnel:

a.      October 7, 2003 – Meeting with Mr. Rundell, Ms. Smoker-Ali and
Ms.Hussain. Right after the meeting, when she was returning to the office
in the hallway, Mr. Rundell suddenly turned around and, in an extreme
voice demanded to know each time he screamed or yelled at her. She was
frightened by the way he was confronting her, just a few minutes after the
meeting in which Ms. Smoker-Ali told Mr. Rundell that this behavior of
yelling is unacceptable. Ms. Smoker-Ali states this in her email also.

b.     April 16, 2003 – Meeting between Mr. Rundell, Ms. Smoker-Ali, Ms. Mayberry, and Ms. Hussain. In which Ms. Mayberry states that the meeting was not regarding her job performance but to lay out Ms. Hussain's job description since Mr. Rundell was constantly changing her job description.

c.     In April 2003, there were several emails exchanged between Mr. Rundell and Ms. Hussain which, were copied to Ms. Smoker Ali, Mr. Chris Riche (Administrative Officer), Ms. Margaret Scobey (DCM), Ms. Alberta Mayberry (Administrative Asst. Officer), Mr. Michael Staunton (Commerce Official in Washington DC who was the right hand to the Regional Director), and Ms. Bobette Orr (Regional Director).

d.     In October 2003, the Regional Director Bobette Orr, made Mr. Rundell aware of Ms. Hussain contacting the EEOC and OIG office per Mr. Douglas Wallace, prior to her termination.

e.     On October 6, 2002, when Ms. Hussain was emailing Mrs. Debra Smoker-ali for help with the discrimination that she was facing, Mr. Rundell himself told Ms.Hussain that "You went over my head instead of talking to me.  You can just quit and leave, right now, I can replace you. You walk out now."

f.     In the declaration included in the report of investigation, Mr. Chris Riche stated that Mr. Rundell was aware of Ms. Hussain's  discrimination grievances and that Mr. Rundell strongly denied or provided differing accounts of what had happened.

g.    In the declaration included in the report of investigation, Ms. Smoker-Ali states that Mr. Rundell was aware of her grievances.

h.    Mr. Rundell declared that in September 2003, he asked the newly arrived deputy, Ed Burton, to conduct an independent review of Aisha's performance and conduct. When Mr. Edward Burton did not even supervise Ms. Hussain for one full month, Mr. Edward Burton states this himself in the declaration that he arrived at post on August 31, 2003. The supervisors, Mr. Omar Mahmood and Mr. Douglas Wallace, who supervised Ms. Hussain for months and year, Mr. Rundell did not get any input from them. This is another example of retaliation.

28.    Due to being constantly aware of Ms. Hussain's reporting to officials regarding the discrimination, Mr. Rundell retaliated by:

a.    Constantly rewriting Ms. Hussain's job description to more demeaning tasks five time written and dozens times verbally.

b.    Mr. Rundell deliberately held back Ms. Hussain's evaluation so that she did not get a step increase in pay that was due on May 18, 2003. As late as September 29, 2003, Mr. Rundell deliberately made sure that she did not receive the pay increase from May 2003.

c.    Mr. Rundell constantly created a hostile and prejudice work environment.

d.    Mr. Rundell had Ms. Hussain work illegally without a contract for eight days from October 1, 2003 to October 8, 2003. Then on October 8, 2003, Mr. Rundell abruptly terminated her contract which was already

funded and approved by the Commerce Department for a period of one year from October 1, 2003 to September 30, 2004.

29.    Prior to the termination there was no unsatisfactory evaluation from Mr. Rundell through out the year, for example:

a.    On 10/6/02 – Mr. Rundell sent the following email message, "Thank you.  That was efficiently done, as usual."

b.    On 4/13/2003 - Mr. Rundell sent the following message via email, "Thanks.  I appreciate your help and applaud the initiative."

c.    On 4/15/03 – Mr. Rundell sent an email saying. "Well it looks like we will finish with Kinarp this week.  Al hamdi allah.  Thank you for your help on this."

d.    On 10/12/2002 –Mr. Rundell gave a Meritorious honor award for a job well done.

e.    For two months just prior to the abrupt termination, Ms. Hussain was working significant overtime hours (10 to 14+ hours a day) and weekends while being 7+ months pregnant.

f.    In each weekly report that Ms. Hussain sent to Mr. Rundell from 10/3/02 to 5/28/03, she performed all administrative duties signed to her on time and the duties that Mr. Rundell assigned that where in other individuals' job descriptions.  In addition, in each weekly report she specifically wrote, "Note: Please let me know if you would like for me to do anything differently".  She was more then willing to professionally perform her job duties that she was hired to perform.

g.    Mr. Rundell never wrote or said anything negative regarding the weekly tasks Ms. Hussain submitted to him or the job tasks that she accomplished weekly that where assigned to her.

### Prayer for relief

WHEREFORE, Plaintiff respectively requests that the Court enter judgment for:

a.    Back pay and all other benefits to which she would have been entitled for;

b.    Compensatory and punitive damages in amounts to be proven at trial;

c.    Reasonable attorneys' fees and costs;

e.    Such other relief as the Court deems just and equitable.

### Jury Demand

Plaintiff requests trial by jury for all claims made in this case

July 25, 2007.

Respectfully submitted,

Aisha Hussain
2262 Sir Amant Drive
Lewisville, TX 75056
(972) 899-4779



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### Office of Federal Operations
### P. O. Box 19848
### Washington, D.C.  20036

Aisha Hussain,
Complainant,

v.

Carlos M. Gutierrez,
Secretary,
Department of Commerce,
Agency.

Appeal No. 0120071125

Agency No. 035500217

Hearing No. 100200500764X

## DECISION

Pursuant to 29 C.F.R. § 1614.405, the Commission accepts complainant's appeal from the agency's November 20, 2006 final order concerning her equal employment opportunity (EEO) complaint alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e *et seq.*  Complainant alleged that the agency discriminated against her on the bases of race (Asian), national origin (Indian), sex (female), religion (Muslim), and color (Brown) when she was subjected to harassment and a hostile working environment, given a poor evaluation, and did not have her appointment renewed upon its October 2003 expiration.[1]

Pursuant to 29 C.F.R. § 1614.405(a), all post-hearing factual findings by an AJ will be upheld if supported by substantial evidence in the record.  Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. National Labor Relations Board*, 340 U.S. 474, 477 (1951)

---

[1] Complainant's claims of harassment included, but were not limited to, being spoken to at a distance of inches from her face, being yelled at, being treated like a personal servant by being required to keep his wife's personal schedule and travel and caring for his child, being required to pay for taxi rides, having different job descriptions, being subjected to belittling remarks and being given demeaning duties such as cleaning the office.

2                                                    0120071125

(citation omitted). A finding regarding whether or not discriminatory intent existed is a factual finding. *See Pullman-Standard Co. v. Swint*, 456 U.S. 273, 293 (1982). An AJ's conclusions of law are subject to a de novo standard of review, whether or not a hearing was held.

After a review of the record in its entirety, including consideration of all statements submitted on appeal, it is the decision of the Equal Employment Opportunity Commission to affirm the agency's final order, because the Administrative Judge's issuance of a decision without a hearing was appropriate and a preponderance of the record evidence does not establish that discrimination occurred.

## STATEMENT OF RIGHTS - ON APPEAL

## RECONSIDERATION (M0701)

The Commission may, in its discretion, reconsider the decision in this case if the complainant or the agency submits a written request containing arguments or evidence which tend to establish that:

1.    The appellate decision involved a clearly erroneous interpretation of material fact or law; or

2.    The appellate decision will have a substantial impact on the policies, practices, or operations of the agency.

Requests to reconsider, with supporting statement or brief, must be filed with the Office of Federal Operations (OFO) within thirty (30) calendar days of receipt of this decision or within twenty (20) calendar days of receipt of another party's timely request for reconsideration. *See* 29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), 9-18 (November 9, 1999). All requests and arguments must be submitted to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, P.O. Box 19848, Washington, D.C. 20036. In the absence of a legible postmark, the request to reconsider shall be deemed timely filed if it is received by mail within five days of the expiration of the applicable filing period. *See* 29 C.F.R. § 1614.604. The request or opposition must also include proof of service on the other party.

Failure to file within the time period will result in dismissal of your request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request. Any supporting documentation must be submitted with your request for reconsideration. The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances. *See* 29 C.F.R. § 1614.604(c).

3                                    0120071125

## COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (S0900)

You have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work. If you file a request to reconsider and also file a civil action, **filing a civil action will terminate the administrative processing of your complaint.**

## RIGHT TO REQUEST COUNSEL (Z1199)

If you decide to file a civil action, and if you do not have or cannot afford the services of an attorney, you may request that the Court appoint an attorney to represent you and that the Court permit you to file the action without payment of fees, costs, or other security. *See* Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791, 794(c). **The grant or denial of the request is within the sole discretion of the Court.** Filing a request for an attorney does not extend your time in which to file a civil action. Both the request and the civil action must be filed within the time limits as stated in the paragraph above ("Right to File A Civil Action").

FOR THE COMMISSION:

*Carlton M. Hadden*
_____
Carlton M. Hadden, Director
Office of Federal Operations


  APR **2 6** 2007
_____
Date

JS-44
(Rev.1/05 DC)

**CIVIL COVER SHEET**

---

**I (a) PLAINTIFFS**

Aisha Hussain
2262 Sir Amant Drive
Lewisville, TX 75056

**DEFENDANTS**

Mr. Carlos M. Gutierrez, Secretary
U.S. Department of Commerce, Agency
1401 Constitution Ave., NW
Washington, DC 20230

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF**
**(EXCEPT IN U.S. PLAINTIFF CASES)**

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
**(IN U.S. PLAINTIFF CASES ONLY)**
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Case: 1:07-cv-01364
Assigned To : Kennedy, Henry H.
Assign. Date : 7/26/2007
Description: Employ. Discrim.

*JURY ACTION*

---

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government
   Plaintiff

◉ 2 U.S. Government
   Defendant

○ 3 Federal Question
   (U.S. Government Not a Party)

○ 4 Diversity
   (Indicate Citizenship of
   Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ◉ 4 |
| Citizen of Another State | ◉ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

---

**IV.  CASE ASSIGNMENT AND NATURE OF SUIT**
**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

○ **A. Antitrust**

☐ 410 Antitrust

○ **B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If
   Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may
be selected for this category of case
assignment.

*(If Antitrust, then A governs)*

---

○ **E. General Civil (Other)**     **OR**     ○ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or
   defendant
☐ 871 IRS-Third Party 26
   USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure
   of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational
   Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC
   Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced &
   Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/
   Exchange
☐ 875 Customer Challenge 12 USC
   3410
☐ 900 Appeal of fee determination
   under equal access to Justice
☐ 950 Constitutionality of State
   Statutes
☐ 890 Other Statutory Actions (if
   not administrative agency
   review or Privacy Act

| ○ G. Habeas Corpus/ 2255 | ○ H. Employment Discrimination | ○ I. FOIA/PRIVACY ACT | ○ J. Student Loan |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☒ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. Labor/ERISA (non-employment) | ○ L. Other Civil Rights (non-employment) | ○ M. Contract | ○ N. Three-Judge Court |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**

Civil Action VII ACT - Employment discrimination due to rac, gender/sex,national origin, religion, pregnancy and retaillion   42 USC 2000

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23 | DEMAND $ _____ JURY DEMAND: | Check YES only if demanded in complaint YES ☒   NO ☐ |
|---|---|---|---|

**VIII. RELATED CASE(S) IF ANY** N.F.   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE 7/25/07   SIGNATURE OF ATTORNEY OF RECORD   *Aisha Hussain*   (Sq/n)

26

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.