**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **AISHA HUSSAIN**<br>2262 Sir Amant Drive<br>Lewisville, TX 75056<br><br>       Plaintiff,<br><br>      v.<br><br>Carlos M. Gutierrez, Secretary<br>U.S. Department of Commerce, Agency<br>1401 Constitution Ave., NW<br>Washington, DC 20230<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 07-01364 (HHK)

**RECEIVED**

FEB   4 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## PLAINTIFF'S SECOND DISPUTE AND DENIAL TO THE DEFENDANT'S MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

Plaintiff, Aisha Hussain, hereby submits the facts again in this second reply to Defendant's reply to the Plaintiff's, "Motion to Deny Defendant's Request for Dismissal and Summary Judgment". The Plaintiff clearly used and exhausted all the administrative remedies required regarding her pregnancy discrimination along with as previously stated the employment discrimination and hostile work environment in violation of the Title VII of the Civil rights Act of 1964 (Title VII) being gender, national origin, religion, and retaliation by Mr. Rundell, Defendant. Plaintiff clearly listed and enclosed the material "facts" in supporting this claim in a two binder document submitted to the court dated November 15, 2007 and through the EEOC Administrative process. Therefore, Plaintiff, with facts established a claim as a matter of law.

## I.  <u>PLANTIFF CLEARLY ESTABLISHED THE PREGNANCY DISCRIMINATION AND THE CLAIM MUST NOT BE DISMISSED</u>

The first notice of pregnancy discrimination was given On October 31, 2003 within 30 days after termination of employment; Plaintiff wrote an email to the Human Resource Officer, Ms. Debera Smoker-Ali, stating the following, "In addition it is **clear gender discrimination because for no reason at all he decided not to renew my contract when I was "seven months pregnant."** And also stated, "I would like to appeal to who ever it is at the Embassy…" (Report of Investigation (ROI) under tab 11 page 39-40 and attached.)  This clearly shows the Defendant and the whole administrative process were clearly aware of this claim, these facts the Defendant is now trying to manipulate and misrepresent.

Second notice in an email to the EEOC office on October 9, 2003, within 30 days after termination of employment Plaintiff stated, "I am in my 7th month of pregnancy; I am devastated by the unfair, unjust and discriminative treatment by David Rundell." (ROI Exhibit 2 page 8, and attached.)

Third notice in the EEOC complaint document that was filed it is stated, "In short, Mr. Rundell summarily, and without notice, told me that I was terminated.  When I was told this I was seven months pregnant…" (ROI exhibit 4, page 4 and attached) In the same document the Plaintiff states, "Please let me know what further information I can provide your regarding this matter, or whether and how the above is in need of clarification or amplification." (ROI tab 4, page 18 and attached)  There was never any response received during the EEOC process stating that the Pregnancy discrimination was being excluded.

Fourth notice the Plaintiff clearly stated during the EEOC process to Mrs. Dorothy Kennedy and in the Declaration of Aisha Hussain document it states, "In fact, I learned from Mr. Doug Wallace an officer in the Riyadh office, that Mr. Rundell had been intending to terminate me during my maternity leave. Mr. Wallace told me this when I confided in him on October 8, 2003." (ROI tab 11 and page13 and attached) This was also stated in a document to the Office of Federal Operations on March 23, 2007 (attached) due to the Agency and the Administrative Judge not adequately considering the EEOC claim.

Fifth fact Since August 2003, Mr. Rundell would randomly and frequently ask the Plaintiff of when she was going on maternity leave. Mr. Rundell was in addition, discriminative towards her for being pregnant and was deliberately holding her evaluation back which was due in May 2002 and intended to terminate her when she went on maternity leave. For this reason the Plaintiff emailed the HR assistant, Faten Ahmed on September 28, 2003 stating, "Please be aware that I do not want my EER finalized without me having a chance to review my EER. In case I am on maternity leave or out of country I will leave you contact information so this EER can be sent to me." This is included in the ROI and attached.

Sixth fact in addition Mr. Rundell was discriminative towards Mrs. Hussain due to her pregnancy and would overburden her. In the ROI under tab 4 page 4 it is stated, "In short, Mr. Rundell summarily, and without notice, told me that I was terminated. When I was told this I was seven months pregnant, doing the job of 3 administrative staff and putting in 10+ hours a day and weekends, as needed. Attached are time and attendance sheets that show how Mr. Rundell deliberately

overburdened the Plaintiff when she was seven months pregnant. Also attached is the email that shows that Mr. Rundell had an approval since November 13, 2002, over a year to hire another Administrative Assistant but he deliberately did not hire another Administrative Assist to overburden Mrs. Hussain even during her pregnancy. Note within six months after the Plaintiff unlawful termination, the Defendant hired "two" Administrative Assistants (See attached).

Seven fact, in an email dated October 8, 2003 Mrs. Hussain reported to Ms. Toy, in the EEOC office that, "Besides being exhausted at the end of the day since I am 6+ months pregnant." This was due to the Plaintiff deliberately being made to do the work of three administrative staffs. And in the same email the Plaintiff states the anguish she is going through even being pregnant and that she could not find time to call and that she did not want to be further scrutinized/harassed for asking the EEOC for help.

The "Information about You" form does not list a "pregnancy" slot to select. The Plaintiff's counsel who represented her for a very short period wrote on the form more then "four times" to see attached document. That attached document details the claim and clearly states, "When I was told this I was seven months pregnant, doing the job of 3 administrative staff and putting in 10+ hours a day and weekends, as needed."

The Defendant is manipulating and misrepresenting the July 26, 2004 letter negatively. The letter clearly states that besides the nine items enumerated the investigation needs to encompass all the evidences new and old including the EEOC complaint (that includes pregnancy discrimination) and in the same letter it is also

noted that to please let me know if this is incorrect (See attached). To which the Agency responded by stating, "The investigator is responsible for identifying, locating, obtaining, and putting into evidence the testimony and the documents of the involved parties." (see attached)

Therefore, the Plaintiff did in fact exhaust all administrative remedies required in order to give federal agencies an opportunity to handle matters internally. Due to the Defendant deliberately and repeatedly denying and ignoring the facts of the EEOC claim since October 8, 2003 (and prior to this the Plaintiff made repeated requests for help to all officials/agencies to stop the discrimination, harassment, hostile work environment, and the retaliating), the Plaintiff had no choice put to file a claim in the Federal court in order to get the fair justice. The Agency/Administrative process had sufficient time to resolve the EEOC case in a fair manner. The EEOC claim including the pregnancy discrimination and the settlement request were clearly detailed and listed in the documents files with the Agency/Administration,

## II. **PLAINTIFF CLEARLY ESTABLISHED BY FACT AND EVIDENCE A LAWFULLY CLEAR EEOC CLAIM**

In the EEOC claim and all documents submitted the Plaintiff clearly gave facts and evidence of how only she was being discriminated, harassed, and tormented by Mr. Rundell. She was the only one made to take care of his daughter and wife, clean offices and hallways, work in fuses, dust, dirt, and heat. At times the Defendant deliberately put the Plaintiff's life in danger, made her an object for all men to stare at, she was also subjected to sexist remarks by workers, religious discrimination, and etc. as detailed in the EEOC claim. Other male or female employees were not

subjected to such anguish by Mr. Rundell in the Riyadh office. To date the Defendant has not submitted any facts or evidence that other employees were subject to such anguish by Mr. Rundell, not even the male administrator assistant was subjected to such anguish.

A. **Plaintiff Repeatedly Clearly with Facts and Evidence Established a Hostile Working Environment**

On July 9, 2004 Mrs. Nancy McNamara from the Office of Civil Rights in a letter stated, "In this case however, since your client was a contract employee, she does not have standing before the MSPB. She does have standing in the Federal EEO compliant processing because she meets the EEOC's "common law agency test." This is in the ROI tab 7 page 2. Despite this being clearly stated, the Defendant since 2002 has been trying to misguide the court to deny the Plaintiff's rights under the Civil Rights VII Act.

In addition the Plaintiff's contract is bounded by the FAR clause 52.249-12 as stated in the contract, which is includes in ROI tab 24 page 7 and 9. The Federal Acquisition Regulation Manual states the following for the Far clause 52.249-12, "The Government may terminate this contract at any time upon at least 15 days' written notice by the Contracting Officer to the Contractor." The Defendant never gave a 15 days notice stating that they will be terminating the Plaintiff's contract. Instead, the Plaintiff was forced to sign the termination contract on the spot and was escort out of the Embassy.

Mr. Rundell since September 2002 to October 8, 2003 continuously and systematically discriminated only the Plaintiff; the Defendant "only" made the Plaintiff clean hall ways and office (humiliation), he would only yell at the Plaintiff to

the point that she would cry out of freight and humiliation, only the Plaintiff's work requirements frequently changed and at times Mr. Rundell kept her guessing of what her work requirements were (humiliation and unreasonable interference with work performance and mental torture), Mr. Rundell deliberately only made the Plaintiff an object for all to stare at, the Plaintiff was deliberately but in situations were she received sexist remarks from workers (humiliation, physically threatening, mental torture and interference with work performance), Mr. Rundell deliberately put the Plaintiff's life in danger (physically threatening), Mr. Rundell would not allow her to practice her religion (pray) during her break (humiliating and violation of civil rights), and Mr. Rundell only compared the Plaintiff to a maid, called her a clerk and dispatcher in front of co-workers (humiliate). All further evidence and facts are detailed in the ROI and in the document submitted to the court on November 15, 2007.

The Plaintiff does legally and clearly qualifies under the Civil Rights VII Act and the Office of Civil Rights validated this in the July 9, 2004 letter. In addition the Plaintiff's worked inside the American Embassy and all Federal Taxes, Medicare, OASDI or Social Security were taken out from each check issued, and each check was directly deposited into a bank in the States. Also, sick and annual leave was being accrued in each paycheck.

The Defendant is manipulating and misrepresenting the facts by falsely pointing to the meetings and memos that the Plaintiff requested for help. In addition, the same meetings and memos that the Defendant is pointing to clearly states the anguish that the Plaintiff was going through but all official at Post and Commerce deliberately

ignored her repeated requests and kept making Mr. Rundell aware of the Plaintiff's requests (Because of being aware the Defendant systematically and continuously retaliated). In addition, through out the EEOC process and to date the Defendant has not submitted any documentation to prove poor performance. The first time the Plaintiff was made aware of a "poor performance" was when she was 7 months pregnant and was illegally first made/forced to sign her termination of employment. After that Mr. Rundell handed the Plaintiff a poor evaluation which is not signed by the Plaintiff. Note the Plaintiff was seven months pregnant and there were three individuals Mr. Rundell, Mrs. Smoker-Ali, and Mr. Riche in a closed room forcing the Plaintiff to sign the termination of employment without merit. On the contract Mrs. Hussain wrote, "have to sign" (clear humiliation, physical and mental threat) see attached.

The Defendant is misguiding the court by stating that being yelled at, cleaning offices and hallways, being deliberately seated as a sex object, and receiving sexist remarks, having her life put in danger, getting tea/coffee, taking care of Mr. Rundell's daughter, taking care of Mr.Rundell's wife, being made to work in poor conditions (dust, dirt, heat and fumes), and not being able to practice her religion (praying) during her breaks, and to keep the Plaintiff guessing about her job duties/requirements were, "clearly part of the administrative position she accepted with the Agency" and that by continuously asking the agencies for help to stop this anguish the, "...Plaintiff demonstrate that she did not want to perform the basic job duties of her position, and that she did not like her workload or office location." Mr. Rundell as stated in the ROI he had been in the middle-east for years and was fully

aware of the middle-eastern culture and religion, therefore, Mr. Rundell deliberately redesigned the Plaintiff's seating area fully knowing that she would be looked upon as a sex object. In addition, please note no other administrative assistant was seated in such a way through out the Embassy. Mrs. Hussain was in fully view to all who visited the second floor (there were many department on this floor) she was right next to the exit and was facing the long hallway of the second floor. In addition, all who visited the second floor would stare at her when coming up the long hallway also.

In addition, the Defendant is referring to the following by manipulating and misrepresenting negatively:

a.      On October 6, 2002 send email to Mrs. Ali. Aisha Hussain stated," I am frustrated and helpless and tried of being humiliated and belittled. I desperately need your help and assistance with how I should handle my boss, David Rundell, and please let me know what I am doing wrong. I am about to have a nervous breakdown (already had one breakdown on Tues. 9/17 –saw Dr. Cristensen for it) for the following reasons:" ROI under tab 4 page 23.

> The email that the Plaintiff wrote to Mrs. Smoker Ali on October 9,
> 2002 states, " I am doing everything that he is asked me to work on,
> even the unnecessary clerical work." And, " He continuous to be
> hostile… "This email is part of the ROI under Tab 4 and page 41. To
> this email the Defendant is manipulating and misrepresenting
> negatively.

b.      On January 27, 2003 the Plaintiff emailed to Mr. Michael Staunton stating, "Things have gone from, "worst" to "unimaginable" for me." (ROI under Tab 4

and page 45.) Further states in the same email, "Bottom line I am being treated daily like a cockroaches by Mr. and Mrs. Rundell." And "I have been doing things exactly as Mr. and Mrs. Rundell has requested but, even then Mr. and Mrs. Rundell seem to find something or another to attack me about." (ROI under Tab 4 and page 52.)

c.      on April 6, 2003, see attached sick leave filed stating, "... subjected to work in dust & dirt and unnecessary stress put on by David Rundell."

### B. Plaintiff Clearly Established her EEOC Claim including the Unlawful Termination of her Employment

To date the Defendant has not produced any evidence showing that the Defendant/Mr. Rundell ever consulted the Plaintiff, Mrs. Hussain regarding her poor work performance. All the memos and meetings clearly were at the request of the Plaintiff to stop the anguish and to ask for help, the Defendant is falsely stating these were poor work performance meetings that Mr. Rundell held. In addition, not one memo or email that the Defendant is pointing to states, that the Defendant/Mr. Rundell held a meeting to go over the Plaintiff's/Aisha Hussain's poor preformance. Instead what Mr. Rundell did sent were emails praising her work and stating her efficiency (these emails submitted to court in the document dated Nov. 15, 2007). The Plaintiff points and urges the court to consider the following facts:

a.      Regarding the October 7, 2002 – Meeting with Mr. Rundell, Ms. Smoker-Ali and Ms. Hussain, in the October 6, 2002 memo Mrs. Hussain requested the meeting ROI Tab 4, page 32. The memo Mrs. Smoker-Ali wrote regarding the meeting states, "The three of us met to discuss Aisha's job description and problems she had spoke about to HRO" (ROI tab 13, page 5). It is also stated, "I

suggested that two to them need to sit down and go over exactly what his expectations are from her and to update her position description." (ROI tab 13, page 5). Note no where does Mrs. Smoker-Ali states that the Plaintiff's work performance was poor.

b.      On March 11, 2003, Aisha Hussain met with Mr. Chris Riche "I would like to keep my job and Not get fired for speaking up about the prejudice and unjust situation." ROI tab 4, page 57-59. In an email Mrs Smoker-Ali states, "The Management Consular also spoke with you, I believe at your request." Note no where does it states that this meeting was held to consult Mrs. Hussain regarding her poor performance but it states that this was a meeting that Mrs. Hussain requested asking for help.

c.      On April 19, 2003 meet with the Deputy Chief of Mission (DCM/ Ms. Scobey). In the declaration by Mrs. Smoker-Ali she states, "the meeting was held at the request of the complaint in order for her to express her grievance to the Deputy Chief of Mission..." in the ROI tab 19 and page 11. Note this meeting was requested by the Plaintiff to express her grievances not a meeting being held regarding the Plaintiff's poor performance.

d.      April 16, 2003 – Meeting between Mr. Rundell, Ms. Smoker-Ali, Ms. Mayberry. This meeting was due to Mrs. Hussain's request, Mrs. Mayberry states, you sought me out," and she states, "In only two instances did stop you from speaking; once on your performance as that was not a point of discussion a this time and another time on your other allegations against Mr. Rundell..."(ROI tab

12 page 31). Note Mrs. Mayberry clearly states in her own email that this was not a performance meeting.

e.        Mrs. Mayberry further states in the same email (ROI tab 12, page 31), "We all agreed that the Final word on your PD was approval from Commerce and that our meeting was for clarification of expectations." As late as April 19, 2003 Mr. Rundell had not gotten an official approval of Mrs. Hussain's job description and kept her guessing of what was her job duties/requirements and there was really no basis of job performance. Mr. Rundell was indeed deliberately making Mrs. Hussain a "moving target" out of her duties in order to discriminate against her.

f.        The October 8, 2003 memo that Mr. Burton wrote is clear proof that the Defendant, Mr. Rundell and management deliberately created a false situation and unlawfully terminated Aisha Hussain. Aisha Hussain never asked for her job description to be rewriting to incorporate more responsibilities. On August 25, 2003, Mr. Douglas Wallace suddenly handed Aisha Hussain a new job description which was on official paper, ROI tab 11 page 50 - 52, and she was asked to sign it and was told that this was her new job description. But in the memo Mr. Burton states himself, "As you know, prior to your departure for annual leave, CO Douglas Wallace approached you concerning the restructuring of the duties and responsibilities for Aisha, Mohammed Masood and Abdul Shakoor with an eye toward giving Aisha considerably more computer systems and support responsibilities. My understanding is that you agreed you were open to the idea and told CO Wallace you would discuss it in detail with him upon his return.

There seems to have been some misunderstanding in that CO Wallace then proceeded to work out a revised PD for Ms. Hussain." This is included in the ROI under tab 15 and page 4. The conspiracy and re-doing of the job description was between Mr. Douglas Wallace and Mr. Rundell instead of penalizing Mr. Wallace, Mr. Rundell on the spot receiving the Memo from Mr. Burton on October 8, 2003, without merit unlawfully terminated Aisha Hussain's contract when she was 7 months pregnant and doing the job of three administrative assistants.

Note, the only document that stated poor performance was submitted by Mr. Ed Burton on the same day of her termination and the Plaintiff only saw that document in the ROI months after her termination. In addition, Mr. Ed Burton had not been working with the Plaintiff for a full "ONE" month and he did not supervise the Plaintiff's work on a daily basis. Mr. Ed Burton states this himself in his declaration (ROI tab 15, page 1), "Her second-line supervisor was Commercial Officer Douglas Wallace. However, at times the Complainant was assigned tasks within her job description by me, the Deputy Senior Commercial Officer" Despite this Mr. Rundell never asked/took Mr. Wallace input regarding the Plaintiff's job performance and never allowed Mr. Wallace to state his input on the Plaintiff's evaluation. Clearly again showing the unlawful termination of the Plaintiff's employment and pretextual intent.

g.    Mrs. Smoker-Ali, Human Resource Officer and to whom the Plaintiff continuously requested for help, stated in her declaration, "I was unaware of any

meeting about her performance" ROI tab 19, page 14. Note, Mr. Rundell deliberately created a hostile working environment throughout the Plaintiff's employment by constant changing the Plaintiff's job duties/requirements as one more form of "continuous discrimination, harassment, humiliation, and continuous mental torture".

h.      Due to Mr. Rundell continuously changing and keeping the Plaintiff guessing regarding her work requirements, the Plaintiff in the emailed weekly report would always state, "Please let me know if you would like for me to do anything differently". Note Mr. Rundell never responded by saying that she was not performing her job duties/requirements or that her performance was poor. (enclosed in the document submitted to the court dated November 15, 2007 tab 14 page 1-66)

i.      In addition, due to the frequent changing of her job description with out notice, the Plaintiff kept a daily log so that whenever Mr. Rundell or Management asked she would be able to state exact what she did each day. Note the memos, form, and emails submitted during her employment will reflect that all work noted in her daily log she did accomplish. (enclosed in the document submitted to the court dated November 15, 2007 tab 13 page 1-116). However, Mr. Rundell nor Management during her employment ever raised the questioned of if the Plaintiff was performing her job duties or not, including clerical duties.

The Defendant states why did the Plaintiff not file an EEOC claim against Mr. McGee who expected sexual favoritism from minority female Administrative Assistance, Note in the ROI tab 4 page 18 it is stated, "Having individuals who had a

hand in having Mr. Rundell further his discrimination towards me, be penalized and questioned, i.e. Mr. Michael McGee and Ms. Mona Hassoun." Note in the ROI tab 4 page 94 – 99, the emails exchanged between Mr. McGee and Mrs. Hassoun explicitly describes their affair on Commerce's email account. Mr. McGee clearly expected minority female administrative assistant to perform sexual favors and due to this only he favored Mrs. Hassoun and not the Plaintiff and without reason assigned the web duties to Mrs. Hassoun. In addition, Mr. Rundell favored Mrs. Hassoun due to her performing personal favors as helping his daughter with homework and etc. (enclosed in the document submitted to the court on Nov. 15, 2007 tab 11, page 57) This clearly proves of why both Mr. Rundell and Mr. McGee discriminated the Plaintiff. Also for these reasons Mr. Wallace stated in his email, "I still feel horrible about what happened. But in the end, he will get what he deserves." (enclosed in the document submitted to the court on Nov. 15, 2007 tab 11, page 55).

Due to the Plaintiff not performing personal favors and for reporting the discrimination and the use and abuse of government resources, property, and authority, Mr. Rundell continuously discriminated/punished/retaliated against the Plaintiff by creating a hostile work environment including the continuous rewriting of her job describing for individuals with little or no education. But the Plaintiff never refused to perform any job duties including clerical tasks, only when her job duties were being drastically changed to demeaning tasks without any explanation she questioned Management, including why such tasks/duties were not being assigned to the male administrative assistant. Since the Plaintiff questioned and asked for help of why her job duties were being changed so frequently, and at times to demeaning tasks

the Defendant is manipulating those statements/words and misrepresenting it
negatively.

In the October 7, 2002 memo Mrs. Smoker Ali clearly states that Mr. Rundell has
to clearly let the Plaintiff know what her job description is. On October 23, 2002 Mr.
Rundell refused to draw up a position description and made the plaintiff draw it up
and in the memo the Plaintiff wrote, "As per your request I have updated the job
description. Please feel free to make what ever changes you would like. However,
since you mentioned that Mona Hassoun in Jeddah handles sectors along with her
current duties and that I could do the same if time permitted, please let me know if
you would also like me to do this." And Mr. Rundell wrote on the same memo "fine
idea" to continue to work on the web development and states, "Let me know which
sector you are interested in" ROI tab 11, page 44, see also attached. Then in the
November 10, 2002 memo the Plaintiff states, "Please let me know what your
thoughts are and feel free to make the changes you would like." ROI 11, page 46 and
attached. The April 19, 2003 meeting was conducted by the Administrative Consular,
Mrs. Mayberry, to hand the Plaintiff another job description without any explanation.
When the Plaintiff questioned of why her duties are being rewritten again even after
excellent performance the Administrator Counselor clearly stated that this was not a
performance discussion (ROI tab 12, page 31) and refused to look into the claim that
the Defendant was again changing the job description due to retaliation and
discrimination. In an email to Commerce/Mr. Staunton the Plaintiff writes, that along
with Mr. Rundell she did not need additional individuals humiliating her. Enclosed in
the document submitted to the court on November 15, 2007 tab 11, page 80 and

attached. Then without Mrs. Hussain asking again regarding her job requirements on August 25, 2003 she was giving another job description on official paper. Given the facts it clearly shows that the Plaintiff never refused to perform any type of clerical duties assigned and the Plaintiff was never consulted during her employment of poor performance but that the Plaintiff did question why only her job description was being constantly changed.

Accordingly, the Plaintiff clearly established with relevant facts her EEOC claim. The Defendant is pointing to the same relevant facts and manipulating the statements/words and misrepresenting it negatively. Any jury will easily know looking at the facts that this is a clear EEOC case.

February 2, 2008

Respectfully submitted,

Aisha Hussain
2262 Sir Amant Drive
Lewisville, TX 75056
(972) 899-4779

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of February 2008, a copy of the foregoing Plaintiff's Second Dispute and Denial to the Defendant's Motion to Dismiss and For Summary Judgment was mailed; postage prepaid, to Defendant, Mr. Darrell Valdez Assistant United States Attorney at 555 Fourth Street, N.W. Washington, D.C. 20530.

Aisha Hussain

him a meritorious honor and CASH award for doing the job of 3 administrative staff members during the time that I was on unpaid leave in June 03 and July 03, due to the Riyadh bombing. This is clear return of favor. Everyone knows that business is slow during the summer; through out history all CS staff members take vacation during June, July, and August due to slow business, even Saudis do not stay in town during the summer. In addition, during this time the whole embassy was on authorized departure and lock down.

Therefore, it is clear that David rewards individuals, no matter how wrong or incompetent, as long as they with out questions do personal favors for David and his family, and quietly help David mismanage and abuse government property and authority, and help David do fraud of funds without question.

I performed each task with excellence and proved my capabilities over and over again. David Rundell deliberately rewrote or verbally redid my job description every few days only to downgrade my job duties to demoralize me. Basically to reflect clerical, receptionist, and dispatching duties. In reality I had to perform not only administrative duties, but Specialists duties at any given time. But David would call me a clerk, dispatcher, and receptionist only to humiliate me in front of others. When David Rundell did other employees evaluations and wrote the job descriptions, he would write it in a way to make sure that when they were being caged that they do not get any lowering of salary. David mentioned this to me on many occasions, if you require I can give you the dates of when he mentioned this and who he was referring to.

It is clear that I did not lose the trust or confidence of my supervisor. What David Rundell really wanted since he arrived at post on 9/02 was an administrative assistant who helped him in abusing and mismanaging of government property and authority and fraud without any questions. In addition, David Rundell believes that minority women are maids and should be doing personal favors without question, as he compared me to a maid in the 10/07/02 meeting with HR. David Rundell refused to accept the fact that I was a competent professional employee who knew her job well, given any task was able to perform at an exceeding level.

Since David Rundell arrived at post, and especially since I came forth, David Rundell has treated me unfairly and continuously created a hostile working environment for me, since I am a conservation Muslim woman of Indian origin.

If you require any documents, emails, dates, or names of witnesses supporting what I have stated, please let me know.

David Rundell has a consistence pattern of misuse and abuse of government property and authority and systematic discrimination of minority women. David has intimated, threatened, and punished every employee at each post he has been at; especially, the minority woman who wanted to conduct business in a professional manner and were hard working and professional.

Therefore as you can clearly see David Rundell was prejudice against me (because I am a conservation Muslim woman of Indian origin) and he was being vindictive when he decided not to renew my contract and wrote such an incorrect evaluation. In addition, it is clear gender discrimination because for no reason at all he decided not to renew my

Exhibit 11  Page 39

~~contract when~~ I was "~~seven months pregnant~~". Also, if you look at my **previous** evaluation it was outstanding and I received a meritorious honor award that year also. How can an employee go from one extreme of outstanding performance to the other extreme of poor performance?

In addition, David was made aware by Commerce that I had inquired with the OIG office. From others I came to know that this was one of the additional reasons by David Rundell terminated my contract. Obviously if David had nothing to hide he would not have abruptly, without reason terminated my contract. – Per my conversation with the OIG office I thought speaking to their office can not result in termination, why were my rights not protect and why was my call and inquiry not kept confidential?

Per all the things I continuously reported, it was without doubt enough for an immediate reporting of EEO and OIG grievance, but trusted Commerce and Post to resolve it in a fair manner.  It is clear now that Commerce and Post only supported David Rundell and just disregarded me and my rights.  Otherwise, per the numerous calls I made, emails I sent, and the times I personally spoke to individuals' both at Commerce and Post, and begged for help, there would have been proper and firm action taken against David Rundell.  And both Commerce and Post would not have allowed David Rundell to terminate my contract when I was seven months pregnant, only due to David being vindictive and prejudice against me.

I would like to appeal to who ever it is at the Embassy to inquire into my job grievance and immediately reinstate my employment, and I would immediately like to file the OIG, OSC (Whistleblower protection), and EEO grievances.  Please send me the necessary paperwork for filing the OIG, OSC and EEO grievances.

Thank You,
Aisha Hussain

Exhibit 11 Page 40

I will be happy to forward list of additional officers and their contact information should you need it. In addition, you can check with every Commerce Specialist I have worked with at the Riyadh post - Habeeb Saeed, Ahmed Khayyat, Maher Siblini, Jacquie Wathen, and etc.

Per Commerce's encouragement I came forth and brought to the attention of Commerce and Post all the use and abuse of authority and property by David Rundell. Including the matter of David Rundell systematically discriminating me, because I am a conservative Muslim woman of Indian origin, a minority woman.

I brought to the attention of Commerce and Post documentation, dates, timing, and names of witnesses showing the misuse, abuse of authority, abuse of property and the systematic discrimination by David Rundell and his wife Yin Rundell.

I believe there is enough evidence for a course of action both by the OIG and EEO office. I believe that both Post and Commerce failed to resolve this matter, instead covered up David Rundell. Therefore, after Commerce's and Post's involvement David continued his abuse, harassment, and threats against me.

David Rundell has a consistence pattern of misuse and abuse of government property and authority and systematic discrimination of minority women. He has done this at the previous post in Jeddah to Mawada Alwazir and Suad Abdul Malik. He abused, harassed, and ultimately terminated Suad Abdul Malik. He devastated her so much that she wanted to commit suicide and was hospitalized with depression. The State department saw that she was mistreated and abused by David Rundell that they looked after her and hired her in the State Department. Besides the Jeddah post, even at the previous post in Dubai he did the same thing. I am sure if you go back and investigate at every post that he has been posted at, his pattern will be consistent. David Rundell has intimated, threatened, and punished employees at each post he has been at; especially, the minority woman who wanted to conduct business in a professional manner.

I am in my 7th month of pregnancy; I am devastated by the unfair, unjust, and discriminative treatment by David Rundell. If I miscarry Commerce will definitely have another legal issue. If I do not get immediate and serious action taken I will take this issue public and approach it legally. It is clear that Commerce just brushed me off. With all the documentation evidence, that I have submitted to Commerce and Post and additional documentation that I have, will enable me to file for a Civil Action law suit.

Please contact me immediately; my number is 966-1-248-3366 extension 2108.

EXHIBIT 2    PAGE 8

evidenced discrimination against me based on my gender, faith, and ethnic background; (VI.) summarize the repeated occasions on which I brought my concerns about Mr. Rundell's abusive conduct (as identified in "1-5") to the attention of relevant officials, including EEO officials – all prior to Mr. Rundell's October 8, 2003 termination of me; (VII.) summarize my knowledge of Mr. Rundell's similar misconduct in prior positions; (VIII.) identify individuals who can verify the information provided here, and may have further relevant information.

### I. Background

I was employed at the U.S. Embassy under personal services contracts from May 20, 2001 through October 8, 2003.

During this period my initial supervisor was Mr. Charles Kestenbaum from – May 20, 2001 until September 7, 2002. Prior to this I worked for the same on a temporary basis from September 2000 to May 20, 2001.

Thereafter my supervisor was Mr. David Rundell, whose position was Senior Commercial Counselor.   During this period my job title was Administrative Assistant/ Office Manager.

I understood that individuals employed under personal service contracts were to be employed on year to year contracts, which would be routinely renewed (unless, of course, there was no longer work to be done, or the performance was substantially unsatisfactory)

My initial contract ran from May 20, 2001 until September 30, 2001. I was then given a contract that ran from October 1, 2001 through September 30, 2002. Then the next contract was from October 1, 2002 through September 30, 2003. After September 31, 2003 I continued to report to work, and to work, at the Embassy. I naturally assumed that my contract would be renewed for one year, as was the routine.

On October 8, 2003 Mr. Rundell gave me my new contract. As printed, the contract was for the October 1, 2003 through September 30, 2004 year. However, Mr. Rundell drew a line across the end date of September 31, 2004 and placed an end date of October 31, 2003. But on October 8, 2003 David Rundell told me he no longer needed my services and he has decided he will not be renewing my contract and that I do not need to return to work.  Present when David Rundell told me this was Chris Riche, Senior Administrative Officer and Debra Smoker-Ali, Human Resources Officer.

In short, Mr. Rundell summarily, and without notice, told me that I was terminated. When I was told this I was **seven months pregnant**, doing the job of 3 administrative staff and putting in 10+ hours a day and weekends, as needed.

Exhibit 4   4

Hagos M. Berhe (GSO)
Mohamoud A. Igge (FMC)
Abdikarim Issa (HR)
Rumana Riaz (IT)
Louis Rodriques (IT)
Muddassir Syed (Travel)
Mohammed Naseeruddin (Travel)

### Seeking Settlement

1. Full compensation under the EEO, for the physical and mental anguish, the tarnish done to my name by Mr. Rundell and Commerce, and for loss of work/wages.

2. In addition all lawyer fees will need to be paid by Commerce to Mr. Dan Guttman.

3. I want it put in Mr. Rundell's permanent record that he has used and abused government resources, authority, and property and that he was prejudice against me.

4. Having individuals who were aware of everything but neglected to help and investigate be penalized and questioned i.e. Mr. Michael Staunton, Ms. Bobette Orr, and Ms. Nancy Kripner. In addition I want this put on their permanent record.

5. Having individuals who had a hand in having Mr. Rundell further his discrimination towards me, be penalized and questioned, i.e. Mr. Michael McGee and Ms. Mona Hassoun. In addition I want this put on their permanent record.

Please let me know what further information I can provide you regarding this matter, or whether and how the above is in need of clarification or amplification.

Very Truly Yours,

*Aisha Hussain*

Aisha Hussain

Enclosures:
1. Email of October 6, 2002 to Ms. Debra Smoker–Ali
2. Email of October 15, 2002 to Ms. Smoker Ali
3. Email of January 27, 2003 to Mr. Michael Staunton
4. January 29, 2003 I sent an email to Ms. Debra Croft

evaluation until October 8, 2003. I only received the evaluation after Mr. Rundell presented me with my new contract and terminated me.

Mr. Rundell had altered my contract by hand, changing the end date from September 30, 2004 to October 31, 2003 – barely three weeks after it started. Only after requiring me to sign the contract terminating me (which I did under duress), did he then give me my long overdue performance evaluation. At this meeting, he also told me that my services were no longer needed and that I did not need to return to work. So although my altered contract was valid until October 31, 2003, Mr. Rundell effectively fired me on October 8, 2003.

This unsatisfactory evaluation from Mr. Rundell was the first negative evaluation I had received while a Department of Commerce employee. Until that point, I had received only positive feedback from him. For example:

(1)    10/6/02 – Mr. Rundell sent the following email message, "Thank you. That was efficiently done, as usual."

(2)    4/15/03 – Mr. Rundell sent an email saying. "Well it looks like we will finish with Kinarp this week. Al hamdi allah. Thank you for your help on this."

(3)    4/13/2003 - Mr. Rundell sent the following message via email, "Thanks. I appreciate your help and applaud the initiative."

Further, it was only after he terminated me that I found out I had been given a negative evaluation. I had absolutely no notice that I was going to be terminated on October 8, 2003 or that Mr. Rundell considered my work sub par. Right before the termination I was working significant overtime hours (10 to 14+ hours a day) and weekends while being 7+ months pregnant. In addition, in each weekly report I submitted to Mr. Rundell, I wrote "Please let me know if you would like for me to do anything differently." I was clearly willing to work with him but Mr. Rundell never wrote or said anything negative regarding the weekly tasks I submitted to him. Had I been given my evaluation in May 2003 when it was due, I could have worked with Mr. Rundell to improve our work situation or found another position. However, the timing of the evaluation and termination suggest that Mr. Rundell had no intention of giving me any warning or any chance to correct my mistakes. In fact, I learned from Mr. Doug Wallace, an officer in the Riyadh office, that Mr. Rundell had been intending to terminate me during my maternity leave. Mr. Wallace told me this when I confided in him on October 8, 2003.

Given the above history, my treatment and termination constitute retaliation for my protected activity.

Page 13 of 14 Aisha Hussain                              Affiant's initials: _AH_


Exhibit 11  Page 13

Docket No.: 0120071125
Compliant No.: 03-55-00217
EEOC case No.: 100-2005-00764X

environment. (See ROI tab 11 page 1 to page 7). As I continuously brought these concerns up from October 2002 to September 29, 2003, Mr. Rundell was being made fully aware of these concerns by Commerce and the authorizes at post. (See ROI tab 11, page 11 and 12) At the end Mr. Rundell retaliated and sudden terminated my contract when I was seven months pregnant. This was clearly due to my email of September 29, 2003 to the EEOC office, and my call to their office. The EEOC office made the Regional Director, Bobetter Orr, aware of my call and she made Mr. Rundell aware, which resulted in the termination of my contract when it was fully approved and funded for one full year.(See ROI tab 11, page 15 and ROI tab 11, page 12).

In addition to the above, the Administrative Judge did not adequately consider that a Personal Service Contract (PSC) of a U.S. citizen can not be terminated at any time during the contract period with out a 15 days written notice by the contracting officer to the contractor. (See copy of the PSC contract stating this in the ROI tab 24, page 7). Per the "extension of personal service contract of American National" document the budget and Commerce approval was for one year from October 01, 2003 to September 30, 2004. (See copy of form in ROI tab 11, page 15). On which Mr. Rundell without 15 days notice illegally suddenly terminated my contract on October 8, 2003 itself. Also note that a PSC contract can be renewed up to five years, per the FAR clauses 52.217-9 of the contract. (see ROI tab 24, page 9).

Also, the Administrative Judge did not adequately consider that on the Personal Services Contracting Action form JF- 62, it is stated that the Reason for termination is "Expiration of appointment" not due to poor performance as Mr. Rundell and the Department of Commerce has been stating since I filed the EEOC claim. (copy of that form is in the ROI tab 24 page 14)

Please note that the above mentioned, and in the EEOC document, EEOC declaration, Report of Investigation, Reply to the Report of Investigation, and in the Summary Judgment the claim of discrimination, retaliation, and hostile work environment has been clearly proven as follows, which the Administrative Judge did not consider:

Sex Discrimination
Being a woman of Indian origin Mr. Rundell believed that I was just like a servant and that I had no rights. No one else in the Riyadh office was treated like this, not even the Indian male administrator, Mr. Mohammed Masood:
1. Mr. Rundell terminated my contract abruptly when I was 7 plus months pregnant. And per Mr. Doug Wallace, an officer in the Riyadh office, Mr. Rundell had been intending to terminate my contract during my maternity leave. (See ROI Tab 11, page 13)
2. Mr. Rundell remodeled and forced me to sit in an open area fully visible to all general public that visited the 2nd floor and all who visited the Commercial section. Due to the situation of women being fully covered in Saudi Arabia, all male visitors stared at me as a sex object. Mr. Rundell was fully aware of the Middle Eastern culture and religion. (as he states this himself in the ROI see tab

**From:**    Aisha Hussain/SAUDIARABIA/USFCS/USDOC
**To:**      "Ahmed
**Date:**    Sunday, September 28, 2003 12:19PM
**Subject:** Re: FW:  EER

---

Thanks Faten,

I guess we'll wait and see.

Please be aware that I do not want my EER finalized without me having a chanc
review my EER. In case I am on maternity leave or out of country I will leave you
contact information so this EER can be sent to me.

Hey, this EER was due in April/May, and you've been requesting periodically sin
David has done everyone's except mine from our department. So, I very much d
David is planning on to do this any time soon. Therefore, if he plans on doing thi:
months ahead, I will be keeping you posted on my whereabouts and contact info
Especially if he decides to do the EER during my maternity leave or etc.

Thanks,
Aisha Hussain
Commercial Service
Tel.: 966-1-488-3800 X. 4511
Fax: 966-1-488-3237
http://www.uscommercialservice.com/saudiarabia/en/
   "Ahmed, Faten S" <AhmedFS@state.gov>

|  | | |
|---|---|---|
| "Ahmed, Faten S" <AhmedFS@state.gov> | To: | "Aisha.Hussain@mail.doc. <Aisha.Hussain@mail.doc |
| 09/28/03 12:11 PM | cc: | "SmokerAli, Debr: <SmokerAliDL@state.gov: |
|  | Subject: | FW: EER |

FYI

-----Original Message-----
From: Ahmed, Faten S
Sent: Sun, September 14, 2003 4:54 PM          *TAB 10 PAGE 14*

# American Embassy Riyadh, Saudi Arabia
## Request for Authorization of Premium Compensation
## and Temporary Regular Duty for Part Time Employees.

Except for emergencies or other unforeseen needs, overtime, compensatory time and regular duty in excess of normal schedule for part time employees (i.e. work week schedule is less than 40 hrs.) must be scheduled and approved in advance. The American supervisor should submit this form to the appropriate authorizing officer (Administrative Counselor for State, otherwise, Head of Agency). After the approval of the request, this form will be retained by the employee until the work is actually performed, then submitted to supervisor and the time keeper to support a credit to the employee for premium time worked. Comp time must be used within a pay period (14 weeks) from the time it is earned or it will be forfeited.

Justification/Reason: _See Below_

| Employee's Name: | Agency/Section | Request Date: | Type of Hours to be Worked: | No. of Hours to be Worked: |
|---|---|---|---|---|
| HASSAN HUSSAIN | ECS | | **OT___ **CW1___ **RD1___ | 11 |
| Pay Period No/Date: | Supervisor's Signature _Douglas Waller_ | | Official Signature Authorizing Request: _Douglas Waller_ | FMC: Funds Availability |

** OT = Overtime     ** CW = Comp Time Worked     ** RD = Regular Duty

| FIRST WEEK | | NUMBER OF HOURS WORKED | | | SECOND WEEK | | NUMBER OF HOURS WORKED | | |
|---|---|---|---|---|---|---|---|---|---|
| DAY | DATE | FROM-TO | OT | CW | RD | DAY | DATE | FROM-TO | OT | CW | RD |
| Sunday | 8/3/03 | 5-7 (Computer performance) | | 2.8 | | Sunday | 8/10/03 | 5-6 (Misc. ECS) | | 1.8 | |
| Monday | | | | | | Monday | 8/11/03 | 5-7 (PSS in ACS) | | 2.8 | |
| Tuesday | | | | | | Tuesday | | | | | |
| Wednesday | 8/6/03 | 5-10 (litigation down servers, workstation monitoring) | | 5.8 | | Wednesday | 8/13/03 | 5-6 (servo issues w/ Paul Sheets) | | 1.8 | |
| Thursday | | | | | | Thursday | | | | | |
| Friday | | | | | | Friday | | | | | |
| Saturday | | | | | | Saturday | | | | | |
| Total Hours Worked | | | | 7.8 | | Total Hours Worked | | | | 4.8 | |

CERTIFICATION: I hereby certify that I have worked the number of hours identified above.

_Hussain_ 9-13-03              _Douglas Waller_ 9/13/03
Employee's Signature   Date     Supervisor's Signature   Date

TAB 10 PAGE 16

*American Embassy Riyadh, Saudi Arabia*

## Request for Authorization of Premium Compensation and Temporary Regular Duty for Part Time Employees.

Except for emergencies or other unforeseen needs, overtime, compensatory time and regular duty in excess of normal schedule for part time employees (i.e. work week, schedule is less than 40 hrs.) must be scheduled and approved in advance. The American supervisor should submit this form to the appropriate authorizing officer (Administrative Counselor for State, Head of Agency). After the approval of the request, this form will be retained by the employee until the work is actually performed, then submitted to supervisor and the time keeper to support a credit to the employee for premium time worked. Comp time must be used within 8 pay periods (16 weeks) from the time it is earned or it will be forfeited.

Justification/Reason: _____

**Employee's Name:** _____

**Pay Period No/Date(s):** _____

**Agency/Section:** ECS

**Supervisor's Signature:** _____

**Request Date:** _____

**Type of Hours to be Worked:** "OT" "CW" "RD:"

**Official Signature Authorizing Request:** _____

**No. of Hours to be Worked:** 7.8

**FMCI: Funds Availability**

### FIRST WEEK

| DAY | DATE | "OT" = Overtime FROM - TO | OT | "CW" = Comp Time Worked CW | RD |
|---|---|---|---|---|---|
| Sunday | | | | | |
| Monday | | | | | |
| Tuesday | | | | | |
| Wednesday | | | | | |
| Thursday | | | | | |
| Friday | | | | | |
| Saturday | 8/23 4:15-7 (this not active) | | 2.8 | 2.8 | |
| Total Hours Worked | | | | | |

### SECOND WEEK

| DAY | DATE | FROM - TO | OT | CW | RD |
|---|---|---|---|---|---|
| Sunday | 8/24/02 | 5:30--7:00 | 1.5 | | |
| Monday | (have Duty Punch at Toy NC) 8/25/02 | | | | |
| Tuesday | 8/26/02 5:30-8:00 (coordinate for FAS) | | 2.5 | | |
| Wednesday | 8/27/02 5:30-7:30 (Staff mtg/dinner issues) | | 1.8 | | |
| Thursday | | | | | |
| Friday | | | | | |
| Saturday | | | | | |
| Total Hours Worked | | 5.8 | | | |

**CERTIFICATION:** I hereby certify that I have worked the number of hours identified above.

**Employee's Signature** _____  **Date** 9-13-03

**Supervisor's Signature** _____  **Date** 9/13/03

American Embassy Riyadh, Saudi Arabia

# Request for Authorization of Premium Compensation and Temporary Regular Duty for Part Time Employees.

Except for emergencies or other unforseen needs, overtime, compensatory time and regular duty in excess of normal schedule for part time employees (i.e. work week schedule is less than 40 hrs,) must be scheduled and approved in advance. The American supervisor should submit this form to  the appropriate authorizing officer (Administrative Counselor for State, otherwise, Head of Agency). After the approval of the request, this form will be retained by the employee until the work is actually performed, then submitted to supervisor and the time keeper to support a credit to the employee for premium time worked. Comp time must be used within a pay periods (14 weeks) from the time it is earned or it will be forfeited.

Justification/Reason: _Lie Below_

| Employee's Name: | | Agency/Section | Request Date: | Type of Hours to be Worked: | No. of Hours to be Worked: |
|---|---|---|---|---|---|
| _Akhed Hussein_ | | _ECS_ | | | |
| Pay Period No/Dates: | | Supervisor's Signature | | Official Signature Authorizing Request: | |
| | | | | **OT __ **CW: __ **RD: __ | FMC: Funds Availiblity |

** OT = Overtime    ** CW = Comp Time Worked    ** RD = Regular Duty

| FIRST WEEK | | NUMBER OF HOURS WORKED | | | SECOND WEEK | | NUMBER OF HOURS WORKED | | |
|---|---|---|---|---|---|---|---|---|---|
| DAY | DATE | FROM - TO | OT | CW | RD | DAY | DATE | FROM - TO | OT | CW | RD |
| Sunday | 8/3/03 | 5:30-6:30 (Men duty Point Wed-yg) | | 1.X | | Sunday | | | | | |
| Monday | | | | | | Monday | 9/8/03 | 5-6 (ES Scool E next furnitures) | | 1.X | |
| Tuesday | | | | | | Tuesday | | | | | |
| Wednesday | 9/3/03 | 5:30-6:30 (Same problem) | | 1.X | | Wednesday | | | | | |
| Thursday | | | | | | Thursday | | | | | |
| Friday | | | | | | Friday | | | | | |
| Saturday | 9/6/03 | 5:30-6:30 | | 1.X | | Saturday | | | | | |
| Total Hours Worked | | | | 3.X | | Total Hours Worked | | | | 1.X | |

CERTIFICATION: I hereby certify that I have worked the number of hours identified above.

_Akhed Hussein_    _9-13-03_
Employee's Signature    Date

_Douglas Wilson_    _____
Supervisor's Signature    Date

TAB 10 PAGE 18

# MAIL

Print - Close Window

**Date:**   Sat, 18 Oct 2003 04:00:41 -0700 (PDT)

**From:**   "Aisha Hussain" <aisha_n_hussain@yahoo.com>

**Subject:**  overtime and etc. - Aisha Hussain

**To:**   smokeralidl@state.gov

Hi Debbie,

Hope all is well with you.

I needed your help with the following:

1. I wanted to check with you and see when it would be
o.k. for me to come to the Embassy and pull all my pay
check stubs off the system.

2, Since I do not have a bank account here, when I
come in can I write a check and get some money out?

3. Can you please make sure that FCS does pay me until
the date they said they would pay me until?  Reason
being is that who ever is doing the Time and
Attendance may not know until when they are suppose to
pay me.

4. As mentioned to you following is my Overtime that I
did not get a change to submit:

9/30/03 from 5:00 to 11:30 - 6 hr. and 30 mins.
10/1/03 from 5:00 t 6:00 - 1 hr.
10/2/03 from 8:00 to 5:00 - 9 hrs. (Thursday)
Total is 16 hrs. and 30 mins.  This is all due to the
Computer upgrade that we had and per the last staff
meeting David said he would pay mine, Abdul Shakoor's,
and Mohammed Masood O.T. for this upgrade.

5. I have more then 22 hours of Comp Time, I would
like that to be converted over to Over time since I am
not there to use up the Comp time that I had accrued.
I took Comp time due to needing the hours to use
during maternity leave, otherwise I would have chosen
overtime.

6. What is going to happen with the vacation and sick
leave hours that I have accrued?

Thank you,
Aisha H..

---

Do you Yahoo!?
The New Yahoo! Shopping - with improved product search

TAB 10  9

**From:**    Andrew Moulton/HQ/USFCS/USDOC
**To:**      Aisha Hussain/SAUDIARABIA/USFCS/USDOC@USDOC
**cc:**      David Rundell/SAUDIARABIA/USFCS/USDOC@USDOC
**Date:**    Wednesday, November 13, 2002 06:01PM
**Subject:** cable authorizing hiring Mary Jane replacement has been sent

I just took the cable authorizing hiring someone to replace Mary Jane to the cable room. Be on the look out.

Thanks,

Andrew Moulton
US Department of Commerce
US & Foreign Commercial Service
Africa, Near East and South Asia
Room 1223
14th and Constitution Ave NW
Washington DC 20230
PH: 202.482.4836
FX: 202.482.5179

*TAB 10 PAGE 20*



| 04-35 | VACANCY ANNOUNCEMENT - RIYADH | 03/24/04 |

**OPEN TO:**  All interested candidates

**POSITION:**  Office Manager/Program Admin Assistant, FSN-8; FP-6(#100149)

**OPENING DATE:**  March 24, 2004

**CLOSING DATE:**  COB Wednesday, April 7, 2004

**WORK HOURS:**  Full-time; 40 hours/week

**SALARY:**
*EFM/MOH/NOR: US$33,304 p.a. (Starting salary)
(Position Grade: FP-6 to be confirmed by Washington)

*Ordinarily Resident: SR. 66,683 p.a. (Starting salary)
(Position Grade: FSN-8)

**NOTE: ALL APPLICANTS WHO ARE NOT THE FAMILY MEMBERS OF USG EMPLOYEES OFFICIALLY ASSIGNED TO POST AND UNDER CHIEF OF MISSION AUTHORITY MUST BE RESIDING IN COUNTRY AND HAVE THE REQUIRED WORK AND/OR RESIDENCY PERMITS TO BE ELIGIBLE FOR CONSIDERATION.**

The U.S. Mission in Saudi Arabia is seeking an individual for the position of Office Manager/Program Admin Assistant in the Foreign Commercial Service Office of its Embassy in Riyadh.

## BASIC FUNCTION OF POSITION

The incumbent will work as Office Manager, Systems Administrator and Personnel Assistant to the SCO and Deputy SCO. The incumbent wills serve as the Receptionist for CS Riyadh maintaining the SCOs' and DSCO's calendar, schedule and confirm meetings, manage computer and computer training, assist in organizing events with private and public sector officials, assist in planning country-wide staff meetings and post-specific outreach projects.



| 04-34 | VACANCY ANNOUNCEMENT - RIYADH | 03/24/04 |
|-------|-------------------------------|----------|

**OPEN TO:**    All interested candidates

**POSITION:**    Fiscal/Admin Assistant, FSN-8; FP-6 (#100267)

**OPENING DATE:**    March 24, 2004

**CLOSING DATE:**    COB Wednesday, April 7, 2004

**WORK HOURS:**    Full-time; 40 hours/week

**SALARY:**    *EFM/MOH/NOR: US$33,304 p.a. (Starting salary)
(Position Grade: FP-6 to be confirmed by Washington)

    *Ordinarily Resident: SR. 66,683 p.a. (Starting salary)
(Position Grade: FSN-8)

**NOTE: ALL APPLICANTS WHO ARE NOT THE FAMILY MEMBERS OF USG EMPLOYEES OFFICIALLY ASSIGNED TO POST AND UNDER CHIEF OF MISSION AUTHORITY MUST BE RESIDING IN COUNTRY AND HAVE THE REQUIRED WORK AND/OR RESIDENCY PERMITS TO BE ELIGIBLE FOR CONSIDERATION.**

The U.S. Mission in Saudi Arabia is seeking an individual for the position of Fiscal/Admin. Assistant in the Foreign Commercial Service Office of its Embassy in Riyadh.

## BASIC FUNCTION OF POSITION

The incumbent will work with all Commercial Officers in preparing budget estimates, reconciling of accounts, reporting final budgets for trade events, and monitors individual trade events budgets. Processes all pertinent fiscal documentation such as purchase orders, vendor payments, and refunds. Also serves as receptionist for FCS Riyadh. The incumbent will also serve as the admin back up for the Office Manager/Admin Assistant performing administrative and clerical duties.

Check your
Credit! It's
Free.

Cut Your
House
Payment by
45%!

Make your Y!
Mail
a TX fax
machine!

A Good
Card for
Bad Credit!

This message is not flagged. [ Flag Message - Mark as Unread ]

**Subject:** From Aisha Hussain
**From:** Aisha.Hussain@mail.doc.gov   Add to Address Book
**To:** a_nasneen_h@yahoo.com,  a_siddiqui_h@yahoo.com, ais_hus@yahoo.com
**Date:** Mon, 13 Oct 2003 14:43:19 +0300

**Aisha Hussain**
**Commercial Service**
**Tel.: 966-1-488-3800 X. 4511**
**Fax: 966-1-488-3237**
**http://www.uscommercialservice.com/saudiarabia/en/**

-----Forwarded by Aisha Hussain/SAUDIARABIA/USFCS/USDOC on
10/13/2003 02:44PM -----

**To: BToy@DOC.GOV**
**From: Aisha Hussain/SAUDIARABIA/USFCS/USDOC**
**Date: 10/08/2003 04:30PM**
**Subject: From Aisha Hussain**

**Hi Ms. Barbara Toy,**

**I am having a little problem with finding a time and place where I can speak
to you privately from work. I do not want anyone to over hear my
conversation; I have already been scrutinized/harassed enough that I do
not what any additional trouble. Besides being exhausted at the end of the
day since I am 6 + months pregnant.**

**We also have about 6 to 7 hours time difference between Washington and
Riyadh, Saudi Arabia. Also our workweek is Sat to Wed.**

http://us.f205.mail.yahoo.com/ym/ShowLetter?MsgId=9975_327716_17849_1264_2140_0...    2/6/2004

---

Yahoo! Mail - ais_hus@yahoo.com                                        Page 2 of 3

**Will try to get hold of you today otherwise, I will try to get hold of you next
week.**

**Thank you,**
**Aisha Hussain**
**Commercial Service**
**Tel.: 966-1-488-3800 X. 4511**
**Fax: 966-1-488-3237**
http://www.uscommercialservice.com/saudiarabia/en/
BToy@DOC.GOV

*TAB 10 PAGE 21*

**Dan Guttman**
**1920 L Street, N.W.**
**Suite 400**
**Washington, D.C. 20036**
Tel.No. 202-838-6050; Fax No.202-478-2068; Email: dan@guttman.com

**BY FAX**

July 26, 2004

Nancy McNamara
Chief, Compliance Division
Office of Civil Rights, Room 6012
U.S. Department of Commerce
Washington, D.C. 20230

Re: Aisha Hussain; Complaint
No. 03-55-00217

Dear Ms. McNamara:

We are in receipt of your letter of July 9, 2004, which states the basis for acceptance of Ms. Hussain's complaint in the above-captioned case.

The letter asks me to notify you if Ms. Hussain believes the issues have not been correctly identified. Out of an abundance of caution, we note the following:

1. The July 9, 2004 letter states that "Complainant sets forth the following examples of harassment" with nine items following thereafter. We note that Ms. Hussain's complaint, which the letter states is in the record, identifies examples of harassment in addition to those enumerated. In addition, in the interim since the complaint was filed, Ms. Hussain has obtained further evidence regarding harassment. We assume that the investigation will encompass all evidence (or examples) of harassment, and not just those enumerated. Please let me know if this is incorrect.

2. As Ms. Hussain's complaint spells out (and as further evidence that will be provided demonstrates) Ms. Hussain was terminated following complaints that Mr. Randell, her supervisor, engaged in abuse of office (as well as complaints of discrimination). The July 9, 2004 letter states that Ms. Hussain's claim that she was subject to reprisal for whistleblowing when she reported her supervisor's misuse of government property is dismissed for reasons previously stated, and is not presently appealable. With great respect, and reserving Ms. Hussain's rights

1

**EXHIBIT**

**15**



**UNITED STATES DEPARTMENT OF COMMERCE**
Chief Financial Officer and
 Assistant Secretary for Administration
Washington, D.C. 20230

Dan Gutman, Esquire
1920 L Street, NW, Suite 400
Washington, DC 20036

AUG 2 4 2004

RE: Aisha Hussain
Complaint Number: 03-55-00217

Dear Mr. Gutnam:

This is in response to your letter dated July 26, 2004, wherein you request clarification of the
incidents of harassment that will be investigated. The incidents of harassment cited in our July 9,
2004, letter of acceptance are recited almost verbatim from your client's formal complaint of
discrimination. Your client's claim of reprisal for reporting her supervisor's misuse of
government property and abuse of office are more properly defined as whistle-blowing activities.
Whistle-blowing activity, *per se*, is not covered under Title VII. Those incidents of reported
abuse of office that can also be construed as discriminatory harassment have been included for
investigation. At this stage of the process, it is only necessary to summarize the incidents
relevant to those claims. The specific details of the incidents are matters more appropriate for
submission to the investigator. The investigator is responsible for identifying, locating,
obtaining, and putting into evidence the testimony and the documents of the involved parties.
Your letter has been placed with your client's formal complainant of discrimination and will be
made available to the investigator assigned to your client's complaint.

I trust this clarification is sufficient. If you have any questions, please feel free to contact me
at (202) 482-4993.

Sincerely,

Susan E. Thomas
Acting Chief, Program Implementation Division
Office of Civil Rights
Department of Commerce

Exhibit 8  Page 4

## EXTENSION OF PERSONAL SERVICES CONTRACT
## AMERICAN NATIONAL

1. Extension Number: PSC-SA-R-03-HR-0003
2. Contract Number: SOSA700-01-P-0012
3. Date of basic contract: 05/20/2001
4. Date of extension of contract: 10/01/03
5. Contractor's name and address:

   Aisha Hussain
   American Embassy
   Riyadh, Saudi Arabia

6. Fiscal Data Availability and certification:
   Fiscal Data: 13-X12500000-02-4703130201-J4011470-1252-1141-340001-0-347001

   Authorized certification of availability of funds. M. Blaine, III - FMC Director 9/30/03
   - This certification is subject to Budget Appropriation & availability of funds.
   - Amount of this extension is US$:  38,037

7. The above contracted is hereby extended as follows:

   Pursuant 3 FAM 8100  Appendix A,  3 FAM 170,  Contracts with u.s. citizens for personal service abroad regulations, this contract has been extended from 10/01/2003 through 09/30/2004.  Additional funding is hereby made available in the amount of US$ 38,037.00 for the next fiscal year.

8. All other terms and conditions shall remain the same.

Debra Smoker-Ali
Human Resources Officer

David Rundell
Senior Commercial Officer

10-8-03

Aisha Hussain
PSC Employee

Exhibit 11  Page 15

**1. NAME** (Last, First, Middle Initial)

HUSSAIN, AISHA

**2. EMPLOYEE OR SOCIAL SECURITY NUMBER**

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

**3. ORGANIZATION**

**4. TYPE OF LEAVE/ABSENCE**

(Check appropriate box(es) below.)

| | DATE | | TIME | | TOTAL HOURS |
|---|---|---|---|---|---|
| | From: | To: | From: | To: | |

- [ ] Accrued Annual Leave
- [ ] Restored Annual Leave
- [ ] Advance Annual Leave
- [x] **Accrued Sick Leave** (see below)
- [ ] Advance Sick Leave

Accrued Sick Leave:
| From | To | From | To | Total |
|---|---|---|---|---|
| 4-7-03 | 4-7-03 | 8:00 | 5:00 | |
| 4-8-03 | 4-8-03 | 8:00 | 5:00 | 16 HRS. |

Purpose: [ ] Medical/dental/optical examination of requesting employee [ ] Other

[ ] Care of family member/bereavement, including medical/dental/optical examination of family member

- [ ] Compensatory Time Off
- [ ] Other Paid Absence (Specify in Remarks)
- [ ] Leave Without Pay

**5. FAMILY AND MEDICAL LEAVE**

If annual, sick leave, or leave without pay will be used under the Family and Medical Leave Act of 1993, please provide the following information:

[ ] I hereby invoke my entitlement to Family and Medical Leave for:

- [ ] Birth/Adoption/Foster Care
- [ ] Serious Health Condition of Spouse, Son, Daughter, or
- [ ] Serious Health Condition of Self

Contact your supervisor and/or your personnel office to obtain additional information about your entitlements and responsibilities under the Family and Medical Leave Act of 1993.

**6. REMARKS**

Sick days taken due to irritation and itchiness and severe headache caused by being subjected to work in dusty dirt and unnecessary dress put on by David Kundell. I saw the Embassy Medical Unit, please see attached note.

**7. CERTIFICATION:** I hereby request/authorize approved absence from duty as indicated above and certify that such leave/absence is required for the purpose(s) indicated. I understand that I must comply with my employing agency's procedures for requesting leave/absence (and provide additional documentation, including medical certification, if required) and that falsification of information on this form may be grounds for disciplinary action, including removal.

**EMPLOYEE SIGNATURE** Aisha Hussain    **DATE** 4-9-03

**8. OFFICIAL ACTION ON REQUEST:** [ ] APPROVED [ ] DISAPPROVED

(If disapproved, give reason. If annual leave, indicate action as available.)

**SIGNATURE**

**DATE**

**PRIVACY ACT STATEMENT**

Section 6311 of title 5, United States Code, authorizes collection of this information. The primary use of this information is by management and your payroll office to approve and record your use of leave. Additional disclosures of this information may be: To the Department of Labor when processing a claim for compensation regarding a job-connected injury or illness; to a State unemployment compensation office regarding a claim for unemployment compensation; to a Federal, State, or local law enforcement agency when your agency becomes aware of a violation or possible violation of civil or criminal law; to a Federal agency when conducting an investigation for employment or security reasons; to the Office of Personnel Management or General Accounting Office when the information is required for evaluation of leave administration; and to the General Services Administration in connection with its responsibilities for records management.

When the employee identification number is your Social Security Number, collection of this information is authorized by Executive Order 9397. Furnishing the information on this form, including your Social Security Number, is voluntary, but failure to do so may result in disapproval of this request.

If your agency uses the information furnished on this form for purposes other than those indicated above, it may provide you with an additional statement reflecting those purposes.

**U.S. OFFICE OF PERSONNEL MANAGEMENT**
**AUTHORIZED FOR LOCAL REPRODUCTION**

**STANDARD FORM 71** (Rev. 12-97)
**PREVIOUS EDITION MAY BE USED**

TAB 11 PAGE 103

Memo to the File

Date of Meeting: October 7, 2002
Time: 1300 – 1400
Place: HRO office

Subject: Summary of meeting between FCS Counselor and LES member

In Attendance:
David Rundell, FCS Counselor
Aisha Hussain, FCS
Debra Smoker-Ali, HRO

The three of us met to discuss Aisha's job description and problems she had spoke about to HRO.

Mr. Rundell suggested that Aisha speak first. He wanted to know what is currently in her current job description and what she was responsible for when working under the previous management. She went over the points such as coordinating paperwork and projects within the office, handling all aspects of representational events, and coordinating the drivers' schedules especially when there was a conflict. She also was responsible for answering the phone and conveying messages to both the American officers and LES in the office. She made travel arrangements for the FCS consular but did not handle travel vouchers. She also assisted Mary Jane in the budget process and covered for her when she was on leave.

Mr. Rundell pulled out the job announcement for Aisah's position from his pocket and said that what was advertised for was an administrative asst./office manager. He clarified that what he wants is someone who can answer all his phone calls, keep track of paperwork and set up a filing system in the office. He believes that Aisha feels the clerical work is beneath her and she has an attitude about doing it. Every time he asks her to do something she has an excuse.

He praised her for the work she has been doing and which could be considered a commerce specialist and said that she has the talent for such work, but he needs a clerical person to screen phone calls and set up appointments according to his new system. Aisha then stated that she is afraid to come to him as he always gets very angry when she tries to explain things. She has no problem in answering his phone but does not know with whom he wants to speak with and whom he doesn't and does not want to be berated when she asks him about the phone calls.

I suggested that the two of them need to sit down and go over exactly what his expectations are from her and to update her position description. He needs to explain what kind of filing system he wants and explain how he wants her to screen his calls. Give her examples of the people he will accept calls from and who he won't.

I then said that from my previous conversation with Aisha it is evident to me that she is afraid to come to him as he tends to get angry and raise his voice to the point of yelling. I continued saying that he may not be aware that he is yelling but sometimes when you are angry you do not realize how your voice goes up. This behavior is unacceptable. He must understand that he cannot raise his voice to anyone in the embassy. at her not matter how frustrated or angry he gets. Please pay attention to your voice when you begin to get upset.

He did not feel that he raised his voice but would work on it. He did say many times in the meeting that he feels that Aisha is not interested in doing clerical work and this is what he needs. He also stated that if she did not want to do this work then it might be best for him to find someone else. The clerical work is especially important as there are only 2 officers doing 4 officers' jobs and he cannot take all of these calls and has limited appointments to ½ hour each.

CC:    Aisha Hussain
       David Rundell
       Margaret Scobey

TAB 11   PAGE 51



"SmokerAli, Debra L"
<SmokerAliDL@state.gov>

04/19/03 10:33 AM

To: "'Aisha.Hussain@mail.doc.gov'" <Aisha.Hussain@mail.doc.gov>, "Scobey, Margaret M" <ScobeyM@state.gov>, "Riche, Chris X(Jeddah)" <RicheChrisX@state.gov>

cc: "'Bobette.Orr@mail.doc.gov'" <Bobette.Orr@mail.doc.gov>, "Mayberry, Alberta J" <MayberryAJ@state.gov>, "'Michael.Staunton@mail.doc.gov'" <Michael.Staunton@mail.doc.gov>, "Riche, Christopher R (Riyadh)" <RicheC@state.gov>, "'JeNelle.Matheson@mail.doc.gov'" <JeNelle.Matheson@mail.doc.gov>, "'Loretta.cole@mail.doc.gov'" <Loretta.cole@mail.doc.gov>

Subject: RE: Regarding meeting today

Aisha,
The purpose for our meeting on Wednesday was to come to a conclusion on the position description. It was not to humiliate you, gang up on you or to discuss other issues that you have with David. I'm sorry you came away feeling that way. We were also not there to gang up on David either. We were looking after your rights to have a position description that reflected what your supervisor expected from you on the job. We held the meeting in order to provide each individual with their rights. I have told you on more than one occasion that I am on no one's side and that my job is to advise individuals and managers what their rights are on the job. I spoke to Loretta Cole, Chief of Personnel Operations in Commerce on Wednesday and her reply to me was that Commerce follows the same regulations and operating procedures as the State Department and all other government agencies. She also confirmed that it was the supervisor's prerogative as to how he divided the work and made assignments as well as re-writing job descriptions.

I and Alberta saw David as being very professional in the meeting. I do not remember him humiliating you at any time. We specifically kept the meeting focused on the Job Description as to alleviate your concerns that you would be evaluated on responsibilities that had been taken away from you.

As far as the other issues you mentioned regarding harassment and misuse/abuse of government property, post took very seriously and the Management Counselor, under direction of the DCM, counseled Mr. Rundell about his actions. As a result of this meeting the Financial Management Officer, the Supervisory General Services Officer and Myself met with Mr. Rundell to go over regulations in the FAM and the LES Handbook. We explained the regs to him and answered his questions as to what was legal and what was not acceptable. The Management Consular also spoke with you, I believe at your request.

I have scheduled a meeting with the DCM today (Saturday) at 1500 to discuss your concerns. I will be in attendance as well. Thanks
Debra

-----Original Message-----
From: Aisha.Hussain@mail.doc.gov [mailto:Aisha.Hussain@mail.doc.gov]
Sent: Saturday, April 19, 2003 8:56 AM
To: SmokerAliDL@state.gov
Cc: Bobette.Orr@mail.doc.gov; mayberryaj@state.gov;
Michael.Staunton@mail.doc.gov; RicheC@state.gov;
JeNelle.Matheson@mail.doc.gov
Subject: Regarding meeting today

TAB 11, 79

**Meeting of April 19, 2005 (Complainant, Smoker-Ali, Ms. Scobey)**

1. Do you recall the meeting?  Do you recall preparing the Memo to the File about meeting? (facsimile copy provided)  Why did you not sign Memo to the File?

*Yes I prepared the memo and I don't normally sign memos to the file. They are just that.  The memo of conversation was to document what was said and both parties had the right to respond to it.*

2. Why was meeting held?  How did you come to be involved in the meeting?  What was the outcome?

*The meeting was held at the request of the complainant in order for her to express her grievance to the Deputy Chief of Mission and  to try to bring this dispute to a close.  I became involved as I was the HR officer.  At the time, I felt the outcome was positive.*

3. The Memo to the File indicates that Ms. Hussain was alleging she was being discriminated against because she was a "conservative Moslem woman of Indian origin."  Was Mr. Rundell aware of these allegations?  If so, on what do you base your conclusion?

*This was brought to his attention after the meeting – To my knowledge, I do not know if he was aware of it previously or not. .*

**Other Issues**

1. Did you ever observe Mr. Rundell speaking to the Complainant is a sexually belittling and intimidating manner?  If so, please elaborate on the instances and circumstances.
*No*

6 of 4                        Initials              *TAB 11 PAGE 17*



**U.S.
COMMERCIAL
SERVICE**
United States of America
Department of Commerce

## THE COMMERCIAL SERVICE – RIYADH

**UNCLASSIFIED
MEMORANDUM**

| | |
|---|---|
| **Date:** | October 23, 2002 |
| **To:** | David Rundell |
| **From:** | Aisha Hussain |
| **Subject:** | Job Description |

*Yes if you have time to take a sector or assist with one that is great. Just remember Mona has no website or BuyUSA problem to worry about*

As per your request I have update the job description. Please feel free to make what ever changes you would like. However, since you mentioned that Mona Hassoun in Jeddah handles sectors along with her current duties and that I could do the same if time permitted, please let me know if you would also like me to do this.

Since I have been working with the development, creation and maintenance of the BuyUSA main and local web site since February of 2001 through the time when these sites were being launched, I would like to continue to do this in coordination with Michael McGee as you had mentioned. I would appreciate it if you could consider this since I have proven that I am capable of handling this job function.

Thanks.

*Fine idea*

*PS Let me
. know which sector
you are interested in*

Exhibit 11  Page 44



## THE COMMERCIAL SERVICE – RIYADH

**UNCLASSIFIED**
**MEMORANDUM**

**Date:**     November 10, 2002

**To:**        David Rundell          *OK DHR*

**From:**     Aisha Hussain      *AH*

**Subject:** ·    Request for taking up a sector

One of the sectors I am interested in taking up is the IT and computer hardware and software sector to promote to women only. I am not interested in taking this sector away from Ahmed Khayyat or assisting him with his projects. I would only like to be involved in conferences and meeting that I could benefit from to be updated about the latest technology and etc. Per my conversation with Ahmed Khayyat there are meetings and conferences that women only are allowed to attend. Since I have a strong IT back ground both in computers and in the telecom industry, I would appreciate it if I could be considered for this.

In addition, I have already started a good relationship with the Saudi businesswomen in Riyadh and this would help in promoting US products and services to them. Some examples of promoting our products and services to women owned businesses and computer related businesses are:
1. Ms. Huda Jeraisy who is very interested in having her computer software certificates Microsoft certified.
2. Ms. Shamseia Tanveer is interested in purchasing child development materials and would like to come to the Embassy so that I could enroll her business (Cordoba Day Care Center) on the BuyUSA website, since she is not that familiar with the internet.
3. Ms. Amal Benis who owns Eve Beauty salon is interested in purchasing some hair care products.

Therefore, maybe I can take up the option of being responsible for women's outreach programs and promoting US products and services to women owned businesses. Please let me know what your thoughts are and feel free to make the changes you would like.

Thanks.

Exhibit 11  Page 46

Hi Debbie,

I spoke to Michael Staunton last night, he said that he would like to speak to you before we have another meeting.
I explained to him that I had faith in the system and the system failed me. I explained to him that along with David Rundell humiliating me, I did need for the meeting to be conducted 3 people against one. I told Michael that the meeting was all about what rights David Rundell has and that per the rules and regulations a Supervisor/Manager can change anyone's job description as he sees fit for the need of the office. Along with reviewing all the different job descriptions from the original Commerce cable to the one that David recently drafted up.

I asked Michael what about my rights? Who is looking into my rights? And if all that is expected that I should just sign off on whatever job description David draws up every few days then why did I even ask for HR, ADMIN, or Commerce's help?

David Rundell is harassing me because he is prejudice against me and he is doing all of this out of spite, and to be vindictive. I spoke up against the prejudice he has towards me and I came forth and reported to HR and Commerce about the misuse/abuse of government property and authority.

Michael said he will check with HR there and with you about why this is only being looked at as David's rights and not being checked into seeing if David is doing all of this to be vindictive. And why my rights are not being looked into also.

Thanks,
Aisha Hussain
Office Manager
Commercial Service
Tel.: 966-1-488-3800 X. 1516
Fax: 966-1-488-3237
http://www.uscommercialservice.com/saudiarabia/en/

TAB 11 PAGE 80