## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AISHA HUSSAIN,

               **Plaintiff,**

      **v.**                                            Civil Action 07-01364  (HHK)

CARLOS M. GUTIERREZ, Secretary,
U.S. Department of Commerce,

            **Defendant.**

### MEMORANDUM OPINION

Aisha Hussain, proceeding *pro se*, brings this action against Carlos M. Gutierrez,

Secretary of the United States Department of Commerce (the "Department"), in his official

capacity, alleging that while she was employed there, the Department discriminated against her

on the basis of her gender, religion, national origin, and pregnancy; subjected her to a hostile

work environment; and retaliated against her for engaging in protected equal employment

opportunity activity, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§

2000e *et seq.*  Before the court is the Department's motion to dismiss and for summary judgment

[#3].  Upon consideration of the motion, the opposition thereto, and the record of this case, the

court concludes that the Department's motion must be granted.

### I.  BACKGROUND

In May 2001, Hussain, a female United States citizen of Indian origin and Islamic faith,

accepted a position as an administrative assistant within the United States Foreign Commercial

Service in the American Embassy in Riyadh, Saudi Arabia.  The position description specified

that Hussain would spend thirty percent of her time providing clerical support, thirty percent of

her time handling phone calls, receiving visitors and arranging schedules and travel, and ten

percent of her time preparing schedules for office drivers, among other responsibilities.  Her

contract extended through September 2001, was renewable annually thereafter, and specified that

she could be terminated "at any time upon at least 15 days written notice . . . ."  Def.'s Ex. 1 at 7.

In September 2002, David Rundell became Hussain's supervisor and in October 2002, her

contract was renewed for another year.

Soon after Rundell became her supervisor, Hussain became unhappy with her job and

began asking for help in resolving "the physical and mental hardship that [she] was made to

endure by Mr. Rundell."  Compl. ¶ 18.  With respect to her responsibilities, Hussain contends

that Rundell required her to keep track of his wife's schedule and travel, insisted on using her as

a dispatcher, rather than a supervisor of drivers, and constantly rewrote her job description.  *Id*. ¶

20.  In terms of her work environment, Hussain asserts that Rundell often yelled at her, made her

sit at a reception desk in an open entrance area, required her to oversee construction workers who

made sexist remarks, referred to her as a clerk and a dispatcher and compared her to a maid, and

would make remarks outside an office that she used for prayer, among other things.  *Id*.  Rundell,

on the other hand, asserts that during the time he supervised Hussain, she constantly resisted

performing the clerical responsibilities of her position, such as filing, scheduling drivers, and

answering phone calls.  Edward Burton, a commercial services officer who arrived in August

2003, also noted Hussain's resistance to performing her clerical duties.  During 2003, at least two

meetings were held between Rundell, Hussain and other embassy officials to discuss the contents

of Hussain's job description, and her job description changed several times.

In April 2003, Hussain met with Debra Smoker-Ali, the human resources manager, and Margaret Scobey, deputy chief of mission, to discuss her grievances. During this meeting, Hussain alleged that she was being discriminated against on the basis of her sex, religion, and national origin. She contacted an equal employment opportunity counselor in September 2003. On October 8, 2003, Rundell gave Hussain a new contract; however, instead of extending her position for another year, this contract expired on October 31, 2003, at which point Hussain was terminated.

Hussain filed a formal complaint of discrimination with the Department's Office of Civil Rights in 2004 alleging that the Department harassed her on the basis of her sex, race, national origin and religion culminating in a hostile work environment. Following the investigation of the complaint, Hussain requested and received a hearing before an Administrative Law Judge of the Equal Employment Opportunity Commission. The Administrative Law Judge granted the Department's motion for summary judgment, finding that the Department had articulated a legitimate, non-discriminatory reason for its actions and that Hussain had failed to set forth any evidence demonstrating that the reason was pretextual. Later that year, the Equal Employment Opportunity Commission's Office of Federal Operations denied Hussain's appeal.

## II. ANALYSIS

This case comes before the court on the Department's motion to dismiss Hussain's pregnancy discrimination claim and motion for summary judgment on Hussain's other claims. The Department argues that Hussain's pregnancy discrimination claim must be dismissed because she did not exhaust her administrative remedies. It further argues that there is no merit to Hussain's claims that she was discriminated against on the basis of her gender, religion, or

national origin, subjected to a hostile work environment, or retaliated against, and therefore it is entitled to judgment as a matter of law.  The court addresses each of these arguments in turn.

**A.     Because Hussain Did Not Exhaust Her Administrative Remedies for Her Pregnancy Discrimination Claim, the Court Grants Summary Judgement on this Claim.**

Before filing a lawsuit under Title VII, a plaintiff must exhaust her administrative remedies, *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997), or else she is precluded from bringing suit in federal court, *see Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995). The Department contends that Hussain failed to exhaust her administrative remedies with respect to her claim of pregnancy discrimination and therefore this claim should be dismissed under FED. R. CIV. P. 12(b)(1) and 12(b)(6).  The parties have submitted matters outside the pleadings that are not excluded by the court.  Therefore, the court will treat the motion as one for summary judgement under FED. R. CIV. P. 56.  *Carroll v. England*, 321 F. Supp. 2d 58, 67 n.4 (D.D.C. 2004); *Polk v. Dist. of Columbia*, 121 F. Supp. 2d 56, 60 (D.D.C. 2000).[1]

The Department argues that Hussain did not raise an allegation of pregnancy discrimination at any point during the administrative process.  Hussain rejoins that she did raise

---

[1]   Pursuant to FED. R. CIV. P. 56, summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file and affidavits show that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law.  Material facts are those "that might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id*. at 255.  The non-moving party's opposition must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial.  FED. R. CIV. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor.  *Laningham v. United States Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987).  If the evidence is "merely colorable" or "not significantly probative," summary judgment may be granted.  *Anderson*, 477 U.S. at 249-50.

her pregnancy discrimination claim during the administrative process, pointing to:  (1) an attachment to her October 31, 2003 email to Smoker-Ali, in which she stated, "it is clear gender discrimination because for no reason at all he decided not to renew my contract when I was '**seven months pregnant**,'"  Pl.'s Ex. Tab 10 at 11-12;[2] (2) her October 9, 2003 email to Barbara Troy, an official at the Department of Commerce, which stated, "I am in my 7th month of pregnancy; I am devastated by the unfair, unjust and discriminative treatment," *id.* at 23; (3) her letter accompanying her administrative complaint, which stated, "[w]hen I was told [that I was terminated] I was **seven months pregnant**," *id.* at 37; (4) her declaration prepared for her administrative hearing, which stated, "I learned from Mr. Doug Wallace, an officer in the Riyahdh office, that Mr. Rundell had been intending to terminate me during my maternity leave," *id.* at 65; and (5) her appeal to the Office of Federal Operations, which stated, "Mr. Rundell terminated my contract abruptly when I was 7 plus months pregnant," *id.* at 26.

The Department replies that the mere mention of her pregnancy in these documents is not sufficient to exhaust the administrative remedies available for Hussain's pregnancy discrimination claim.  It argues that in her formal complaint and accompanying narrative, Hussain only mentions her pregnancy in the background section, but fails to make any further mention within the portion setting forth the facts supporting her allegation of discrimination. The Department further states that in response to Hussain's complaint, it sent Hussain's attorney a list of the conduct that formed the basis of the discrimination claim, which did not include any allegation of pregnancy discrimination.  Although given the opportunity to point to any

---

[2]  The court references the exhibits submitted by Hussain with her opposition to the Department's motion for summary judgment according to the tab number, as designated by Hussain.

inaccuracies contained in the list, Hussain's attorney failed to raise the issue of pregnancy discrimination.

To satisfy the exhaustion requirement, the allegations in an administrative complaint must be sufficiently specific in order to "give federal agencies an opportunity to handle matters internally whenever possible." *Brown v. Marsh*, 777 F.2d 8, 14 (D.C. Cir. 1985).   A court may exercise jurisdiction only over those claims contained in a plaintiff's administrative complaint, or claims "like or reasonably related to" allegations in the administrative complaint, that were exhausted. *Park*, 71 F.3d at 907.   Specificity in a charge is not a "mere technicality" and compliance with all procedures and deadlines is mandatory.   *Id*. at 907.

Here, the only mention of pregnancy in Hussain's administrative complaint is her statement that she was seven months pregnant when she was terminated.   Def.'s Ex. 13. Nowhere in the administrative complaint does she even hint that she was terminated *because* she was pregnant or otherwise discriminated against *because* of her pregnancy.   *See id*.   Moreover, she failed to bring this charge to the attention of the Department even after she was asked if the basis of its investigation, which did not include any investigation into pregnancy discrimination, was accurate.   *See* Def.'s Exs. 14 & 15.   Because the purpose of the exhaustion requirement is to vest the federal agencies with primary responsibility for maintaining nondiscrimination in employment, *see Kizas v. Webster*, 707 F.2d 524, 544 (D.C. Cir. 1983), and to permit employers to investigate claims of discrimination promptly, *see Del. State Coll. v. Ricks*, 449 U.S. 250, 256-57 (1980), it would be contrary to the purpose of the requirement to allow Hussain to press her claim of pregnancy discrimination here, where she failed to allege it in her complaint or response

to the Department.  Therefore, the court grants summary judgment to the Department on
Hussain's pregnancy discrimination claim.

**B.      Hussain Fails to Present Evidence from Which a Reasonable Jury Could Find that
         She Was Subjected to a Hostile Work Environment.**

The Department argues that Hussain did not establish a *prima facie* case of a hostile work
environment because the alleged harassment was not sufficiently severe and pervasive and
therefore it is entitled to summary judgment.  It states that the majority of Hussain's allegations
amount to nothing more than disagreement with her job duties and that the alleged discriminatory
comments by Rundell are not sufficiently severe or pervasive to materially affect or change a
condition of Hussain's employment.

Hussain rejoins that Rundell created a hostile working environment by:  (1) continually
changing her job description to give her more demeaning tasks including making her clean
hallways and keep his wife's schedule; (2) making rude remarks when he knew that she was
praying; (3) yelling and screaming at her; (4) comparing her to a maid; (5) making her sit in an
open area within view of incoming persons and requiring her to accompany him and three other
men on an errand out of the office in violation of Saudi Arabian religious law; (6) making her
watch verbally-abusive male remodeling workers; (7) dictating what she could and could not
place on her desk and in which chair to sit; (8) not hiring another administrative assistant despite
having funds; and (9) standing by as his wife laughed at the notion that another Muslim worker
would need to take a month off to go to Mecca and Medina.[3]

---

[3]    Hussain makes other allegations, but she either does not point to evidence for these
allegations or points to a Report of Investigation which she did not provide to the court.  The
court does not consider allegations that are not supported by evidence provided to the court.

A hostile work environment exists "when workplace conditions are so suffused with 'discriminatory intimidation, ridicule and insult' of such severity or pervasiveness as to alter the conditions of the victim's employment." *Hussain v. Principi*, 344 F. Supp. 2d 86, 107 (D.D.C. 2004) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)) (other internal quotation marks omitted). To establish a viable claim, a plaintiff must show that (1) she is a member of a protected group, (2) she was subjected to unwelcome harassment, (3) the harassment occurred because of her protected status, (4) the harassment materially affected a term, condition or privilege of employment, and (5) her employer knew or should have known about the harassment, but failed to take steps to prevent it. *See Lester v. Natsios*, 290 F. Supp. 2d 11, 22 (D.D.C. 2003); *see also Ware v. Billington*, 344 F. Supp. 2d 63, 71 n. 1 (D.D.C. 2004) ("it is not enough to merely show harassment, for Title VII does not prohibit all forms of workplace harassment, only those directed at discrimination because of [a person's protected status]") (internal citation omitted).

In determining whether a plaintiff has satisfied this requirement, the court must consider all relevant circumstances, including the frequency and severity of the conduct at issue, "whether it is physically threatening or humiliating, or a mere offensive utterance," and whether the alleged abuse "unreasonably interferes with an employee's work performance." *Curry v. District of Columbia*, 195 F.3d 654, 662 n.16 (D.C. Cir.1999) (citing *Harris*, 510 U.S. at 23). In this Circuit, "casual or isolated manifestations of a discriminatory environment" do not provide a sufficient basis for a hostile work environment claim. *Park*, 71 F.3d at 906 (citation omitted). The standard for determining a hostile work environment is intentionally demanding to ensure that Title VII does not become a "general civility code." *Faragher v. City of Boca Raton*, 524

U.S. 775, 788 (1998) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)).

In this case, the majority of Hussain's allegations of a hostile work environment concern the fact that her job responsibilities were continually changed and downgraded, and that she was not treated like a professional in that she was asked to do tasks below her job title, asked to sit in the reception area, and told how to organize her desk.  Defendants are correct that such complaints over undesirable job responsibilities and office arrangements do not support a hostile work environment cause of action.  *See Brantley v. Kempthorne*, No. 06-1137, 2008 WL 2073913, at *8 (D.D.C. May 13, 2008) ("Title VII does not provide a cause of action for the 'ordinary tribulations of the workplace,' and 'not everything that makes an employee unhappy is an actionable adverse action'") (quoting *Faragher*, 524 U.S. at 788 and *Ware*, 12 F. Supp. 2d at 13); *see also Veitch v. England*, 471 F.3d 124, 130-31 (D.C. Cir. 2006) (holding that non-selection for a desirable position, assignment to undesirable duties, sharing a small office, and being criticized did not make out a hostile work environment causing a constructive discharge); *DeNovellis v. Shalala*, 124 F.3d 298, 311 (1st Cir. 1997) (holding that being assigned to undesirable jobs or positions a plaintiff considers below her qualifications is not akin to a pervasive environment claim).  Hussain also alleges that her constantly changing job description created a "moving target," however, as discussed in Part C of this opinion, the evidence shows that Hussain's core responsibilities did not change and that she sought some of the changes in her job description.

Hussain's remaining allegations similarly do not make out a viable hostile work environment claim.  The evidence to which Hussain points in support of her contention that

Rundell yelled and screamed at her makes clear that Rundell yelled and screamed at many people of varying races and nationalities. *See* Pl.'s Ex. Tab 12 at 19 ("On an almost daily basis, David Rundell would have an episode where he would lose his temper, raise his voice . . . . There was not blatant discriminatory remarks, just rude and impatient remarks [about staff of] various nationalities, races . . . ."). While such behavior, if true, certainly does not reflect well on Rundell's professionalism, Hussain fails to demonstrate that Rundell's yelling and screaming at her was based on her status as a member of a protected class. *See Ware*, 344 F. Supp. at 71 n.1. In addition, Hussain's evidence suggests that Rundell was not and should not have been aware that the remodelling workers were verbally abusive to her. *See* Pl.'s Ex. Tab 11 at 81-82 (in an email to Rundell, Hussain states that she was "going through verbal abuse by the kennarp works [sic] (told Omar since you where [sic] not available at that time) . . . ."); *Lester*, 290 F. Supp. 2d at 22.

Hussain's other allegations present a closer call but ultimately do not demonstrate a "workplace so suffused with 'discriminatory intimidation, ridicule and insult' of such severity or pervasiveness as to alter the conditions of [her] employment." *Hussain*, 344 F. Supp. 2d at 107 (quoting *Harris*, 510 U.S. at 21). In her notes on her meeting with Scobey, Hussain writes, "[w]hen I close the door and pray he makes belittling remarks," Pl.'s Ex. Tab 11 at 102, and Smoker-Ali notes that Hussain states that Rundell has on occasion pulled her out of prayer, Pl.'s Ex. Tab 12 at 21. In her email to Smoker-Ali, Hussain writes that when she indicated to Rundell that the reason a driver might be taking time off during Ramadan was to spend time in Mecca and Medina, Rundell's wife "rudely laughed and said for a whole month!" *Id*. at 24. And in her email to Rundell, Hussain writes, "you have compared me to a maid in the meeting with Debra

Smoker-Ali." Pl.'s Ex. Tab 11 at 82. These acts, discrete in nature and occurring over a year, even when combined, are not sufficiently serious or continuous to create an environment of severe and pervasive discriminatory intimidation or insult. *See Lester*, 290 F. Supp. 2d at 33-34. Therefore, summary judgment is appropriate on Hussain's hostile work environment claim.

**C.      Hussain Fails to Present Evidence from Which a Reasonable Jury Could Find that She Was Discriminated Against Based on Her Gender, Religion, or National Origin.**

The Department argues that Hussain cannot make out a *prima facie* case of discrimination based on her gender, religion, or national origin because the vast majority of her allegations relate to job assignments not linked to loss of pay or any other loss and because she cannot show any harm or loss with respect to her conditions of employment. In the alternative, the Department argues that the government has articulated a legitimate, nondiscriminatory reason for its actions, namely that Hussain resisted performing the basic requirements of her position. Hussain responds that the Department is lying about the facts underlying its decision not to extend her contract because she did perform all of the tasks that were asked of her and Rundell had previously given her good performance reviews.

Title VII of the Civil Rights Act makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Until recently, where there was no direct evidence of discrimination at the summary judgment stage, this court's analysis of disparate treatment claims was governed by the complex burden shifting procedural framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). In *Brady v. Office of*

*Sergeant at Arms*, the D.C. Circuit simplified this framework.  520 F.3d 490, 493-94 (D.C. Cir.

2008).  Pursuant to *Brady*, if an employer asserts a legitimate non-discriminatory reason for the

treatment at issue, a court only needs to determine whether an employee has produced sufficient

evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason is

not the actual reason and that the employer intentionally discriminated against the employee on

the basis of race or gender.  *Id*.

Pretext "means both that the explanation is incorrect *and* that the employer's real reason

was discriminatory."  *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1288 n.3 (D.C. Cir. 1988).

There are many methods of demonstrating that an employer's stated reason is pretextual,

including showing that the employer is lying about the underlying facts that formed the predicate

for the employment decision.  *Brady*, 520 F. 3d at 495 & n.3.  Once a plaintiff discredits an

employer's asserted non-discriminatory reason, she must demonstrate that the actual reason was

discriminatory, although "discrediting an employer's asserted reason is often quite probative of

discrimination."  *Id*. at 496 n.4.

In this case, the Department argues that Hussain cannot even make out a *prima facie* case

of discrimination because she can point to no adverse employment action.  The Department is

correct that an adverse employment action must be "a significant change in employment status,

such as hiring, failing to promote, reassignment with significantly different responsibilities, or a

decision causing significant change in benefits."  *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir.

2003) (citation omitted).  Many of Hussain's allegations do not fit this definition, but her

allegation that she was terminated due to her gender, religion, or national origin, even if her

contract specified that she could be terminated at any time with notice, does.  *See Daisley v.*

*Riggs Bank, N.A.*, 372 F. Supp. 2d 61, 67 n.2 (D.D.C. 2005) ("at-will employees 'undoubtedly' may not be terminated for illegally discriminatory reasons") (citation omitted).  Therefore, with respect to this allegation, the court will follow *Brady*'s instructions and begin with whether the Department has stated a legitimate, non-discriminatory reason for the actions taken.

The Department asserts that the legitimate, nondiscriminatory reason for terminating Hussain is that she refused to perform the basic tasks of her job.  For evidence of this, the Department points to her position description, which states that thirty percent of her responsibilities were clerical support and another thirty percent were handling phone calls, receiving visitors, and arranging schedules and official travel, Def.'s Ex. 2 at 1, in combination with:  (1) a November 2002 memo from Rundell to Smoker-Ali, which states that Hussain was not answering phones, dealing with drivers' schedules, or handling routine filing, Def.'s Ex. 5 at 6-7; (2) an October 2003 memo from Burton to Rundell stating that "[t]he record shows that Aisha [Hussain] has demonstrated her resistance, refusal and in some cases failure to adequately perform some of the clerical and administrative duties and responsibilities," Def.'s Ex. 6 at 10; and (3) two notes to the file written by Rundell stating that Hussain "failed to perform routine duties in a timely fashion," including filing and preparing a leave schedule, Def.'s Ex. 12 at 34, and refused to complete his travel vouchers, Def.'s Ex. 9 at 33.  The court finds that the Department has stated a legitimate, non-discriminatory reason for terminating Hussain.

Hussain contends that this reason is pretextual because she did perform all of her duties as asked and because her job description kept changing, creating a "moving target."  As evidence that she performed all of her duties, she points to her daily log from September 2002 until October 2003, Pl.'s Ex. Tab 13, her weekly reports between October 2002 and May 2003,

13

including a weekly email stating, "[i]f there is anything you would like done differently, please let me know," Pl.'s Ex. Tab 14, copies of the drivers' schedules in from April 19 to May 28, 2003, Pl.'s Ex. Tab 15, and a series of emails and weekly reports between March and April 2003 demonstrating her progress on the filing system, Pl.'s Ex. Tab 11 at 108-09, 117-23.  She also points to (1) an April 2003 email in which she writes, "I have done every clerical and dispatching duty assigned to me," *id*. at 107; (2) an April 2003 letter from Rundell to Smoker-Ali stating, "I am attaching a new position description that more accurately reflects the work [Hussain] was hired to do, has been doing since my arrival and will be expected to do in the future," *id.* at 66; (3) an October 2002 email from Rundell regarding drivers' schedules stating, "[t]hat was efficiently done, as usual," Pl.'s Ex. Tab 12 at 5, and an April 2003 email stating, "I appreciate your help and applaud the initiative," *id*. at 7; and (4) a meritorious honor award that Rundell nominated her for in October 2002 for her work on a women's business seminar, Pl.'s Ex. Tab 11 at 42-43.  As evidence that her job description kept changing, she points to a series of email exchanges about her job description and a number of different job descriptions.  *Id*. at 72-93.

A reasonable jury could not find that Hussain has established that the Department's reason is pretextual.  While certainly demonstrating that Hussain worked each day and performed a variety of tasks, her daily logs and weekly reports do not demonstrate that she performed the clerical and administrative tasks satisfactorily contrary to the Department's contention.  Nor do one month of calendar entries or a series of emails in which she discusses filing with Rundell show that she scheduled the drivers or completed filing satisfactorily.  While her citation to Rundell's statement about the work "she has been doing since my arrival" out of context appears to support her assertion that she was satisfactorily completing her assigned tasks, it comes as part

of a memorandum in which Rundell discusses Hussain's poor performance on the website and during a time, April 2003, when Rundell wrote several notes to the file concerning Hussain's resistance to completing her assigned duties.  Finally, the email accolades and nomination for a meritorious honor award either occurred at the very beginning of Rundell's tenure, before he began to assert that she resisted performing her clerical duties, or regard Hussain's non-clerical duties, or both, and therefore do not present evidence upon which a jury could find that the Department is lying about its reasons for terminating Hussain's contract.

This case differs from *George v. Leavitt*, 407 F.3d 405, 413-14 (D.C. Cir. 2005) and *Desmond v. Mukasey*, 530 F.3d 944, 963-64 (D.C. Cir. 2008), in which the court determined that by vigorously disputing the employer's stated reasons for terminating an employee, that employee established enough evidence of pretext to survive summary judgment.  This is because unlike in those two cases, Hussain does not point to any positive evaluation of her performance or any testimony by co-workers that tends to shed doubt on the Department's statements about her performance.  And while "there is no rule of law that the testimony of a discrimination plaintiff, standing alone, can never make out a case of discrimination that could withstand a summary judgment motion," *George*, 407 F.3d at 414 (quoting *Weldon v. Kraft, Inc.*, 896 F.2d 793, 800 (3d Cir. 1990)), there is no circumstantial evidence here, as there was in *Weldon*, that Rundell otherwise treated females, Muslims, or people of Indian origin differently or unfairly.  *See Weldon*, 896 F.2d at 794-96.

Hussain's allegation that Rundell created a "moving target" by constantly changing her job description similarly does not hold up after an evaluation of the evidence.  While her job description did change several times, the clerical duties at issue in this case, including answering

phones and supervising drivers' schedules, did not.  Further, the evidence suggests that at least once, Hussain requested that the description be changed and that it was changed to suit her preferences.  *See* Pl.'s Ex. Tab 11 at 90 (email from Hussain to her direct supervisor Wallace lamenting that Rundell might not approve a new job description created at Hussain's request). Rather than a "moving target," the evidence suggests a struggle to create a job description that would fulfill both Rundell and Hussain's needs and desires.[4]  Therefore, the court must grant summary judgment to the Department on Hussain's discrimination claim.

**D.     Hussain Has Failed to Present Evidence from Which a Reasonable Jury Could Find that the Department Unlawfully Retaliated Against Her.**

Hussain alleges that Rundell retaliated against her complaints that he was discriminating against her by discriminating against her, creating a hostile work environment, and terminating her contract.  The Department argues that Hussain cannot prevail because she is unable to show that the Department's legitimate, non-discriminatory reason for terminating her contract, namely concerns over her performance and her resistance to performing the basic functions of her job, was pretextual.  Hussain rejoins by pointing to evidence that Rundell was aware of her accusations of discrimination.

When a Title VII defendant files a motion for summary judgment with respect to a claim of retaliation, the motion is analyzed under the burden-shifting framework established in *McDonnell Douglas.  Holcomb v. Powell*, 433 F.3d 889, 901 (D.C. Cir. 2006).  "First, a plaintiff

---

[4]  Hussain also appears to suggest that Rundell purposely did not evaluate her between May 2002 and October 2003 so that she missed a chance for an annual salary increase.  The evidence that she points to in support of this allegation, an email from Rundell to Human Resources, suggests that Hussain was evaluated in May 2003, however.  Pl.'s Ex. Tab 11 at 71 ("Aisha [Hussain] received an unsatisfactory evaluation for the period of May 19, 2002 to May 18, 2003.").

must establish a *prima facie* case of retaliation; if she meets that burden, the employer must articulate a legitimate nonretaliatory reason for its action; finally, the plaintiff has the ultimate burden of establishing that the reason asserted by the employer is pretext for retaliation." *Id.*  As in disparate treatment cases, in retaliation cases where the employer has offered a legitimate, non-discriminatory reason for an employment decision, the first step in the *McDonnell Douglas* paradigm drops out and the sole inquiry is whether the plaintiff  "produced sufficient evidence for a reasonable jury to find that the employer's asserted [non-retaliatory] reason was not the actual reason." *Brady*, 520 F.3d at 494.

Hussain alleges that the Department retaliated against her by discriminating against her, creating a hostile work environment, and terminating her contract.  The court has already decided, however, that Hussain has failed to present evidence upon which a reasonable jury could find that she was subjected to a hostile work environment or discriminated against based on her gender, religion, or national origin.  In so concluding, the court has determined that Hussain has not put forward evidence to demonstrate that the Department's legitimate, non-discriminatory reason for terminating her contract was pretextual.  Therefore, Hussain's retaliation claim must also fail and summary judgment is appropriate.

### III.  CONCLUSION

For the foregoing reasons, the court finds that the Department's motion for summary judgment must be GRANTED.  An appropriate order accompanies this memorandum opinion.


Henry H. Kennedy, Jr.
United States District Judge

17